Amos S. Basel, J.
Defendant is charged with violation of section 1141 of the Penal Law. On March 13, 1966 a police officer selected the book “ Flesh Worshipers ” from a rack in a bookstore at 251 West 42nd Street, where defendant was employed. The officer handed the book, face up, to defendant. The book was placed in a bag, by a wrapper, and handed to the policeman, by defendant, who received a dollar for the purchase.
Defendant was seated at a raised counter about 15 feet away from a revolving rack which contained other paperbacked books of similar type. It was from this rack the book was selected. The illustrations on the books in that rotating shelf consisted of semi-nude females in various poses. Defendant on cross-examination referred to this collection as “the sex books”. Defendant claimed he had not read the book nor the blurbs, nor the advertising. There are 15,000 books in the store and at least 100 titles. Only 5% of the books are of the type of “Flesh Worshipers ”. He had worked in the store for two years and five days. He was familiar with the stock.
On March 13 only he and the wrapper were in the store. Defendant’s job included the taking of inventory and reporting to the owner, who did the buying. He put the books on the shelves. People had bought books from the rack before.
The'front cover of “ Flesh Worshipers ” contains a picture of an almost nude female lashed by ropes to two poles, her wrists *636 and ankles bound. She is facing a woman in costume, breasts, legs and part of her buttocks exposed, who is wearing high leather boots and gloves and headband to match. In the back-, ground stands a man dressed in armor with a weapon upraised facing the lashed girl.
The rear cover of the book contains a synopsis of the story.
1. OBSCENITY
In 1957 in Butter v. Michigan (352 U. S. 380) the Supreme Court of the United States began to develop constitutional standards for dealing with obscenity. In a long series of decisions the court made it clear that although the First Amendment’s constitutional guarantees of freedom of expression applies to literature, art and scientific works dealing with sex, “ obscenity is not within the area of constitutionally protected speech or press ” (Roth v. United States, 354 U. S. 476; Alberts v. California, 354 U. S. 476, 481; Kingsley Books v. Brown, 354 U. S. 436; Mounce v. United States, 355 U. S. 180; One, Inc. v. Olesen, 355 U. S. 371; Sunshine Book Co. v. Summerfield, 355 U. S. 372; Tralins v. Gerstein, 378 U. S. 576; Grove Press v. Gerstein, 378 U. S. 577; Jacobellis v. Ohio, 378 U. S. 184, 187).
In Both v. United States (supra, p. 489) the court declared the standard to be used in determining, “ [T]he present critical point in the compromise between candor and shame at which the community may have arrived ” (United States v. Kennerley, 209 F. 119,121) to be “ Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest. ’ ’
Faced with applying that broad standard in specific instances the court said in Jacobellis v. Ohio (supra, p. 188): “ Since it is only ‘ obscenity ’ that is excluded from the constitutional protection, the question whether a particular work is obsceue necessarily implicates an issue of constitutional law.” And at page 190: “ This Court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected.” This means in effect that Judges at all levels of the judicial process are required to read the material with the need to determine whether it has outstepped its constitutional limitations. This makes us censors subject to ultimate review by the Supreme Court of the United States. (See concurring opn. of Mr. Justice Douglas, Memoirs v. Massachusetts, 383 U. S. 413, 431.)
In the role of determining what books that “ appeal to prurient interests ” have outstripped constitutional protection the *637 court appeared to have accepted the outer limitation that only “hard-core pornography ” would be condemned. Mr. Justice Stewart concurred in Jacobellis v. Ohio (supra, p. 197): “I have reached the conclusion, which I think is confirmed at least by negative implication in the Court’s decisions in Roth and Alberts, that under the First and Fourteenth Amendments criminal laws in this area are constitutionally limited to hardcore pornography.” (See, also, Manuel Enterprises v. Day, 370 U. S. 478; and Mr. Justice Harlan’s dissents in Memoirs v. Massachusetts, supra, p. 455 and in Ginzburg v. United States, 383 U. S. 463, 493.)
Our Court of Appeals following the Supreme Court has struggled with the problem of where to draw the line between the permissible and the obscene. In People v. Richmond County News (9 N Y 2d 578, 586) the “hard-core pornography test” was adopted and Judge Fuld said: “ Mindful of the constitutional necessity to open the door barring state intrusion into this area ‘ only the slightest crack necessary ’ (Roth v. United States, 354 U. S. 476, 488, supra), and desirous of erecting a standard which embodies the most universal moral sensibilities and may be applied objectively, we are of the opinion that the prohibitions of section 1141 of the Penal Law should apply only to what may properly be termed ‘ hard-core pornography ’. ’ ’
This ‘‘ hard-core pornography ’ ’ test appeared to be the law on March 13, the charge date of the information in the instant case. Does this book meet the test? Although it contains no ‘ ‘ four letter ’ ’ words, the book describes in detail a series of deviate sexual experiences and mass orgies. The seven characters, including a missionary nurse and a minister, all engage almost continuously in sexual excess. There are a number of sadistic and masochistic episodes in which the whippings are described in blunt detail. There are unusual sex scenes between men and women, there are various lesbian activities carefully described. Very few deviate exercises are omitted and there is a great emphasis on cunnilingus and flagellation. The line between what is permissible trash and ‘ ‘ hard-core pornography ” is sometimes hard to define. (A Quantity of Books v. Kansas, 378 U. S. 205; People v. Birch, 40 Misc 2d 626.) Mr. Justice Stewart describing “hard-core pornography” said he could not define it but “ know it when I see it ”. (Jacobellis v. Ohio, supra, p. 197.) My opinion of this book is that it is “ sick ” and the most vile revolting trash, but short of being “ hardcore ” as I understand that term. (Others I am sure will differ.)
However, on March 21,1966 the Supreme Court of the United States pronounced a series of decisions which apply to and are *638 decisive of the instant case and' require me to exercise my “constitutional judgment” by finding this book obscene, even though it be not “hard-core pornography”. (Memoirs v. Massachusetts, 383 U. S. 413; Ginzburg v. United States, 383 U. S. 463; Mishkin v. New York, 383 U. S. 502.)
In Memoirs (supra) Mr. Justice Bkexnan, writing the majority opinion for a badly divided court, clarified, summarized and appeared to limit the Roth doctrine. He said (p. 418): “Under this definition (see Roth definition, supra) as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.”
The book “Flesh Worshipers ” meets this definition completely. It is sexual degradation carefully prepared to appeal only to prurient interests. Nowhere in the entire book is there the least effort to discuss anything other than a prurient interest in sex.
The book without any question affronts ‘ ‘ contemporary community standards ’ ’ relating to sex by degrading it and revelling in its degradation. It is utterly without any attempt at “redeeming social value”. The Supreme Court majority found this value in “ Fanny Hill ” — it is not possible to discover any understanding of what “ social value ” means or implies in “ Flesh Worshipers ”.-
In Ginzburg (supra) Mr. Justice Brenxax, writing for the Supreme Court included some additional factors to be weighed in determining the area between permissible publication of matters discussing sex, and obscenity. He introduced a new factor to be considered in deciding what is obscene. The court will now examine the method of advertising and exploiting the book. If the publisher or distributor sells his material as pornography, in close cases that will provide and give certainty to the missing factor, it will determine the result. (See Ginzburg, supra, p.474.) And at pages 475 to 476 the court said: “Where an exploitation of interests in titillation by pornography is shown with respect to material lending itself to such exploitation through pervasive treatment or description of sexual.matters, such evidence may support the determination that the material is obscene even though in other contexts the material would escape such condemnation.”
*639 The Ginzburg test of “ pandering ” is complied with by an examination of the exploitation material used to sell “ Flesh Worshipers ”. The lurid picture on the cover, the synopsis of the story on the rear cover at the bottom of which there appears in capital letters ‘ ‘ unbelievably depraved ” and the material on the teaser page (the one below the cover) eloquently speak for themselves in this context. The book was displayed in a rack containing similar “ sex books
The third decision, Mishkin v. United States (supra), also is determinative of the instant case. Here Mr. Justice Brennan said (p. 508): “Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than to the public at large, the prurient-appeal requirement of the Roth test is satisfied if the dominant theme of the material taken as a whole appeals to prurient interest in sex of the members of that group.” The description of the material condemned in Mishkin appears to be similar to “ Flesh Worshipers ”. But in Mishkin there was proof from testimony of the authors, of the books’ intent, to reach a deviant group. This element of intent is lacking here and given only the book itself and no explanatory evidence I find this part of the Mishkin holding lacking in proof.
But the Mishkin opinion has removed any doubt that the book in the instant case is obscene. The Supreme Court has now removed the outer limit that only ‘ ‘ hard-core pornography ’ ’ will be barred. The rule is now more elastic. Mr. Justice Brennan said (pp. 507-508): “ States are free to adopt other definitions of obscenity only to the extent those adopted stay within the bounds set by the constitutional criteria of the Roth definition”. * * *
“ The New York courts have interpreted obscenity in § 1141 to cover only so-called hard-core pornography ’, see People v. Richmond News, Inc., 9 N Y 2d 578, 586-587) since that definition of obscenity is more stringent than the Roth definition ”.
It thus appears it is no longer necessary to require material to be “ hard-core ” before it can be declared obscene. There is no doubt in my mind that the book here involved must be condemned under the Roth doctrine as now proclaimed by the Supreme Court.
2. SCIENTER
Defendant argues that he is not guilty of violating section 1141 because he had no knowledge of the contents of the book he sold. He relies, in urging dismissal, upon Smith v. California (361 *640 U. S. 147). The Supreme Court in that case however said (p. 154): “ The circumstances may warrant the inference that he was aware of what a book contained, despite his denial.” Mr. Justice Black in his dissent said (p. 156): “ The Court’s opinion correctly points out how little extra burden will be imposed on prosecutors by requiring proof that a bookseller was aware of a book’s contents when he possessed it.”
Our Court of Appeals in People v. Finkelstein (9 N Y 2d 342, 344-345) said: “ A reading of the statute [§ 1141] as a whole clearly indicates that only those who are in some manner aware of the character of the material they attempt to distribute should be punished. It is not innocent but calculated purveyance of filth which is exorcised”. (Finkelstein who was convicted owned a bookshop at 251 W. 42nd St.)
The testimony in the instant case is much stronger against this defendant than that appearing in the Finkelstein decision. Conviction was affirmed (People v. Finkelstein, 11 N Y 2d 300 [appeal from this court]).
Defendant here admitted under cross-examination that the books in the rack with “ Flesh Worshipers ” were “ sex books ”. They were all 15 feet from where he sat. He had worked in the store for more than two years, he took inventory. He had sold books from this rack before. He had put books on shelves as part of his employment. He certainly had enough knowledge of what he was distributing, within the definition in the cases here cited, even though he never read the book. I find defendant guilty.