Breitel, J.
A so-called adult comic magazine called Zap No. 4 has been found obscene and for its sale two booksellers in separate cases tried together have been convicted of a violation of section 235.05 of the Penal Law. Each of the defendants was fined $500 and if the fine was not paid to serve 90 days in jail. The fines were paid. The Appellate Term affirmed, and defendants appeal by leave of an Associate Judge of this court.
The fact of obscenity need not be dwelt upon at this time. Most of this court agree with the courts below that the material sold was obscene, and its nature was discussed by the trial court in its elaborate opinion determining the case. What remains at issue, with disagreement in this court, is whether the record contained sufficient evidence to establish that the booksellers knew of the obscene contents and by way of alternative ratio decidendi whether the statutory presumption that a seller of obscene materials knows the contents of what he sells is valid (Penal Law, § 235.10, subd. 1).
The trial court both found actual knowledge and applied the statutory presumption. After having completed in its opinion its treatment of the statutory presumption it detailed the testimony of the booksellers in which they admitted personally *21 selling many copies of the magazine. It also noted that each defendant had ordered and reordered the magazine when a new issue came out or on exhaustion of the current supply. It wrote: “ Such facts are similar to those presented in People v. Weingarten (50 Misc 2d 635, 640, affd. 55 Misc 2d 681; revd. on other grounds 25 N Y 2d 639) and where held there, as I hold the stated facts here, to constitute sufficient knowledge by the defendants, Dargis and Kirkpatrick, of the contents and character of Zap No. 4, although they may have never read through it. ” (64 Misc 2d 1055, 1071.) Assuming that one may fail to read the sentence in question as conveying the meaning suggested here, reference to the Weingarten case, cited by the trial court, negates any straining at ambiguity. The Weingarten case involved no presumption and the trial court there weighed the evidence to reach the inference of scienter.
The trial court’s problem was of course to decide the motion to dismiss and to rule on the entire case. Hence, the recourse to discussion both of the presumption and the inference of fact. The presumption justified denial of the motion to dismiss even as of the time of its making. The inference of fact, regardless of the presumption, but supportive of it in a sense, justified the finding of guilt on the whole case. Thus, the trial court’s resort to alternative rationes decidendi.
Of course, as will be noted shortly, the inference of scienter from possession alone of contraband would have sufficed to deny the motion to dismiss at the close of the People’s case. Certainly, the trial court chose not to make the inference of scienter on the People’s case and that omission may not be supplied on appeal. With equal certainty however it made the inference of fact in evaluating the whole case.
Most, if not all, of the evidence relating to the defendants’ knowledge was introduced by them after the court reserved decision on their motions to dismiss at the close of the People’s case. However, it is settled that a defendant who does not rest after the court fails to grant a motion to dismiss at the close of the People’s case, proceeds with the risk that he will inadvertently supply a deficiency in the People’s case. (See People v. Farina, 290 N. Y. 272, 274; People v. Corbisiero, 290 N. Y. 191, 193; People v. Trotta, 30 A D 2d 562, 563; McGautha v. California, 402 U. S. 183, 215-216; United States v. Calderon, 348 *22 U. S. 160, 164, n. 1; United States v. Maffei, 450 F. 2d 928, 930 [6th Cir.], cert. den. 406 U. S. 938; United States v. Rosengarten, 357 F. 2d 263, 266 [2d Cir.]; United States v. Haskell, 327 F. 2d 281, 282, n. 2 [2d Cir.]; United States v. Carabbia, 381 F. 2d 133, 138 [6th Cir.]; United States v. Greene, 442 F. 2d 1285, 1286-1287, n. 3 [10th Cir.]; but see United States v. Rizzo, 416 F. 2d 734, 736, n. 3 [7th Cir.]; Cephus v. United States, 324 F. 2d 893 [D. C. Cir.].)
Earlier, while ,still discussing the statutory presumption, and to establish that the presumption had not been rebutted, the trial court pointed out that with its conspicuous display the magazine stood out “ like a sore thumb ” from the other publications handled by the booksellers.
It is evident then that the trial court found scienter both by reason of the statutory presumption not having been rebutted and by its own inference of the fact of knowledge from the evidence. Since the attack on the validity of the presumption rests in part on the probabilities of knowledge by the booksellers of what kind of material they were selling, it necessarily follows that the probabilities supporting the validity of the presumption, the failure to rebut it successfully, and ¿he inference of knowledge overlap. The conviction should be affirmed on either view of the case.
Defendant Dar gis was the manager and sole employee making purchases for a bookshop in which the magazine was sold. In particular, he ordered and reordered the magazine, personally unpacking copies and positioning them on the shelves. He sold 20 to 25 copies himself, and admitted saying to customers that he “ was surprised to see that a comic book sold so well.” He also admitted he had glanced at “ the ending pages ” of Zap No. 4, and had looked at the garish cover with the legend “ Adults Only ”. Defendant Kirkpatrick was the comanager of his bookshop in which the magazine was also sold. He did the ordering and reordering of various issues of Zap, including the ordering of 150 copies of Zap No. 4. He admitted personally having sold 25 to 30 copies of Zap No. 4. The characteristic drawings of the magazine are largely of the same kind from the first page to the last, so that any sampling would have been illustrative of the bulk. It is undisputed that each of the bookshops was a purveyor of large quantities of legitimate publications, kept in stock *23 in the many thousands, with a wide range of serious literature, fiction and periodicals. '
Because it is the simpler of the two issues, the first to be discussed is the permissible inference in a criminal case that one in possession of contraband knows the contraband nature of his possession.
The principle was most recently discussed by this court in People v. Reisman (29 N Y 2d 278). Treating of the possession of a large commercial quantity of marijuana picked up as a shipment at an air terminal by the defendant and consigned to his care, it was said: ‘ ‘ The crime of possessing dangerous drugs requires a physical or constructive possession with actual knowledge of the nature of the possessed substance (Penal Law, §§ 220.05-220.20). Knowledge, of course, may be shown circumstantially by conduct or directly by admission, or indirectly by contradictory statements from which guilt may be inferred (see, e.g., People v. Groom, 60 Cal. 2d 694, 696; People v. Embry, 20 Ill. 2d 331, 332; 72 C. J. S., Poisons, § 7, subd. c., par. [2]). Generally, possession suffices to permit the inference that the possessor knows what he possesses, especially, but not exclusively, if it is in his hands, on his person, in his vehicle, or on his premises (e.g., 2 Wigmore, Evidence [3d ed.], §§ 244-245, 260; cf. Kuchlik v. Feuer, 239 App. Div. 338, 339). This, of course, is an elemental inference based on common experience and all but universal probabilities. Thus it is an ancient rule of inference of rebuttable presumption of fact that the recent and exclusive possession of the fruits of any crime warrants the inference of guilt, including, when material, knowledgeable possession (Wigmore, op. cit., supra, vol. 1, § 152, vol. 9, § 2513; Richardson, Evidence [9th ed.], § 88 and cases cited). In the case of contraband its possession is a crime per se, and hence the inference of guilt, that is, knowledgeable possession, is as strong as is the case for instance, with stolen goods (e.g., People v. Roman, 12 N Y 2d 220, 222; People v. Berger, 260 App. Div. 687, 689-690, affd. 285 N. Y. 811; Wigmore, op. cit., supra, § 152; Richardson, loc. cit., supra).” (29 N Y 2d, at pp. 285-286.)
Needless to say, the inference of knowledge rests on the probabilities of human transactions. It is rare that one does not know what one possesses. Since the inference of knowledge is but that, the burden of going forward and negativing the inference is *24 a slight one and, by the nature of things, rarely is there occasion to invoke it. It must be an extraordinary circumstance which prevents one from knowing what one possesses.
When one moves to the alternative ground for the trial court’s conviction and for this court’s affirmance, that of the statutory presumption, there are parallel analyses.
It has always been the law, and the only difference today is that the doctrine is more sharply circumscribed, that a statutory presumption in a criminal case, even if rebuttable, must have a supporting foundation in the probabilities. Otherwise, persons charged with crime could be required unfairly to prove their innocence and in some cases compelled as a practical matter to testify in their own behalf. On the other hand, statutory presumptions that do no more than codify accepted rules of inference (as in knowledge of the contraband nature of contraband possessed) have always been held valid (Penal Law, § 165.55; see, e.g., People v. Berger, 260 App. Div. 687, affd. 285 N. Y. 811; People v. Elfe, 37 A D 2d 208). So too, presumptions designed to prevent persons closely associated in time and space from avoiding responsibility by any one of them for the contraband (as in the case of guns found in a vehicle occupied by two or more persons) have been consistently sustained in this court and the United States Supreme Court (e.g., People v. Terra, 303 N. Y. 332, 335, app. dsmd. for want of a substantial Federal question 342 U. S. 938). The cases which have analyzed statutory presumptions and have justified them on the grounds of “ fair ”, “ natural ” and “ rational ” connections with elements of a crime or on the probabilities bearing on criminality have been discussed in People v. McCaleb (25 N Y 2d 394, 400-404; see, also, Ann., Lottery Device — Statutory Presumption, 17 ALR 3d 491, 494-495).
Most important for purposes of this case is to recognize, as was said in the McCaleb case, that the Supreme Court in Leary v. United States (395 U. S. 6) did not cast-all statutory presumptions in criminal cases in any doubt at all. The difficulty in that case was that a double inference was required to sustain the presumption there, namely, that the marijuana was imported and that defendant knew of such importation, and only the first part of the double inference was supported by the probabilities (People v. McCaleb, supra, at pp. 401-402).
*25 This does not mean that a statutory presumption has no greater effect than a permissible inference based on probabilities. The truth is that a presumption will require less in the way of probabilities to support it. In short, unlike the inference, it need not establish the ultimate fact to which it is addressed beyond a reasonable doubt, often the case with the simpler inference (People v. Reisman, 29 N Y 2d 278, 286, supra; cf. McCormick, Evidence [1954], § 313; 22A C. J. S., Criminal Law, § 579, pp. 331-332; State v. Tutalo, 99 R. I. 14, 17-20).
On this view, it is hardly arguable that by a purely logical test the presumption of knowledge in an obscenity statute is amply supported by the probabilities. Even the largeness of the bookshop does not lessen the probabilities; if anything, with respect to egregiously packaged or conspicuously bizarre material it will stand out, as the trial court said, “ like a sore thumb ”, in a staid collection of books. Nor should the test be easier for the large bookseller as contrasted with the small one. Indeed, the small one may well be victimized by tie-in sales or lack of knowledge of his wares because his books and magazines are only a small part of his stock. In any event, no merchant, regardless of the size and scope of his inventory, can survive economically unless he knows his stock. This is a truism and an ancient one.
Although no courts have made the distinctions it would seem too that in sustaining legislatively enacted presumptions one must look to counterbalancing factors. It is one thing to have presumptions in crimes punishable by long imprisonment, or even capital punishment. It is another to utilize presumptions in minor crimes and offenses where the policing problem is aggravated and the escape of responsibility by studied ignorance or denial too easy. Moreover, one must look to the ease with which a presumption may be rebutted. If it is easy for the defendant to rebut, then the presumption is a tolerable burden (see People v. McCaleb, 25 N Y 2d 394, 401, supra; McCormick, op. cit., supra, § 313, pp. 662-663). Of course, the corollary principle, favoring the defendant, is that a plausible rebuttal may very well place the burden and going forward again on the prosecution if it is to sustain its over-all burden of persuasion which is to establish guilt beyond a reasonable doubt (id.).
*26 The logic of proof aside, there is an added policy consideration in the use of a presumption in any case involving a limitation on speech or press. This policy consideration concerned the Supreme Court in Smith v. California (361 U. S. 147) and it is the concern of the dissenters in this court. That concern is also shared by the majority.
The fear is that any censorship of obscene materials will inhibit the bookseller from open dissemination of only possibly obscene material. That fear, however, is not to be confused with the holding of the Smith case which rejected out of hand a State statute which made the seller of obscene material guilty, regardless of his knowledge or ignorance of the contents. No such statute, of course, is involved here.
Mr. Justice Brennan wrote the majority opinion in the Smith case which made clear that the purpose of the holding was not to emasculate prosecution for obscenity. After express disavowal of such an effect the opinion went on to say: ‘ ‘ Eyewitness testimony of a bookseller’s perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial ” (361 U. S., at p. 154).
The quoted comment embraces of course the alternative ground for sustaining the convictions in this case based on the inference of fact. But Mr. Justice Bbennan went on to envisage the possibility of a burden placed on a bookseller to go forward and explain his possession of the contraband—the presumption in short. He said: “ We need not and most definitely do not pass today on what sort of mental element is requisite to a constitutionally permissible prosecution of a bookseller for carrying an obscene book in stock; whether honest mistake as to whether its contents in fact constituted obscenity need be an excuse; whether there might be circumstances under which the State constitutionally might require that a bookseller investigate further, or might put on him the burden of explaining why he did not, and what such circumstances might be. Doubtless any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene, but we consider today only one which goes to the extent of *27 eliminating all mental elements from the crime. ” (361 U. S., at pp. 154-155).
Notably, the opinion recognized that any obscenity statute applicable to a bookseller will induce some tendency to self-censorship, but also indicated that the decision did not require meeting the problem. The importance of the expressed restraint is of course that otherwise any effective control of obscenity would become impossible. The “ hardcore ” obscenity to which modern efforts are directed is largely of the kind where the authors and publishers are or would be largely anonymous or disguised. It is at some point of distribution that the offense may be uncovered and only sometimes worked backward to the makers of the contraband. In any event, so long as the Supreme Court has not viewed obscenity as beyond legislative control, it behooves the courts to sustain rational efforts at control and not, indirectly on attenuated constitutional speculations, to overthrow serially every restrained effort at control. So long as obscenity measures are restricted to the type of material now involved, the social redeeming value qualification retained, and only rebuttable presumptions based on rational connection or probabilities are utilized, the risk to constitutionally protected speech or press is invisible.
Accordingly, the order of the Appellate Term should be affirmed.