**Calvin YOUNG, Petitioner-Appellant,**

v.

**Robert ABRAMS, Attorney General of the State of New York, Respondent-Appellee.**

**No. 638, Docket 82–2315.**

United States Court of Appeals, Second Circuit.

Argued Nov. 5, 1982.

Decided Jan. 7, 1983.

---

Judd Burstein, New York City (Gerald L. Shargel, New York City, on the brief), for petitioner-appellant.

Thelma Lee, Asst. Dist. Atty., Kew Gardens, N.Y. (John J. Santucci, Dist. Atty., Queens County, Kew Gardens, N.Y., on the brief), for respondent-appellee.

Before TIMBERS, KEARSE, and PIERCE, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner-appellant Calvin Young, a New York State prisoner, appeals from a final judgment of the United States District Court for the Eastern District of New York, Jack B. Weinstein, *Chief Judge,* denying his petition for a writ of habeas corpus. Petitioner contends that his state court conviction for obscenity in the second degree, in violation of N.Y. Penal Law § 235.05 (McKinney 1980), was unconstitutional because there was no evidence from which the jury could have found the requisite element of scienter and because application of a presumption of scienter permitted by N.Y. Penal Law § 235.10(1) (McKinney 1980) was unconstitutional.[1] The district court dismissed the petition, concluding that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found scienter beyond a reasonable doubt. We affirm.

---

1. Young was convicted in Supreme Court, Queens County, on August 17, 1981, and was sentenced to six months' imprisonment and fined $1,000. We are informed that he began serving his prison term in October 1982.

## I. BACKGROUND

Section 235.05 of New York's Penal Law provides, in pertinent part, that "[a] person is guilty of obscenity in the second degree when, knowing its content and character, he: 1. Promotes, or possesses with intent to promote, any obscene material ...." Section 235.10(1) provides, in pertinent part, that "[a] person who promotes ... obscene material ... in the course of his business is presumed to do so with knowledge of its content and character." The term "promote" is defined to include "exhibit[ing,]" "advertis[ing]," and "agree[ing] to do the same." N.Y. Penal Law § 235.00(4) (McKinney 1980).

The events leading to the prosecution of Young began in the spring of 1977. On May 3, 1977, investigators from the Queens County District Attorney's Office seized a film entitled "Agony," which was being shown at the Mayfair Theatre ("Mayfair") in Fresh Meadows, New York. Following the seizure, a grand jury indicted Cal-Bud, Inc. ("Cal-Bud"), the corporation that owned the Mayfair, together with Young and Marvin ("Buddy") Munchnick, the owners of Cal-Bud, for obscenity in the second degree in violation of § 235.05. The trial took place in New York Supreme Court in June 1981 against Cal-Bud and Young. (Munchnick by then had become a fugitive.)

### A. *The Evidence at Trial*

The prosecution's case as to Young's "promotion" of "Agony" and his knowledge of its content and character was entirely circumstantial. The evidence consisted largely of documents of Cal-Bud and of companies doing business with Cal-Bud and revealed the following. Cal-Bud had been incorporated by Young and Munchnick, each of whom, in 1977, owned 50% of its stock. Young was an officer and chairman of the Board of Directors. He was authorized in the corporation's resolutions to sign checks and to borrow money on Cal-Bud's behalf. He signed salary checks, checks payable to a person who booked films for Cal-Bud, and checks payable to the agency that placed advertisements for the Mayfair's films. Throughout 1977 Young drew a weekly salary from Cal-Bud in the amount of $600; the weekly salary of Munchnick, Cal-Bud's other 50% owner, was $400.

The prosecution presented the billing records of the advertising agency used by Cal-Bud. The agency had advertised in newspapers and/or the New York Movie Guide, for Cal-Bud's account, the showing of "Agony" from April 27, 1977, through May 3, 1977.

In addition, the prosecution presented the testimony of Inga Uggeri, who had been a part-time cashier at the Mayfair from 1976 until 1981. Uggeri worked at the theatre from 5 p.m. to 10 p.m. four days a week, and while on duty saw Young about once a week. Young usually remained at the theatre for 1–2 hours. During this period the theatre was showing X-rated films and Uggeri testified that she might have discussed with Young the nature of the films being shown; she had a conversation with either Young or Munchnick "about the porno movie." She asked why the Mayfair was not showing "regular" pictures and was told it was because "regular" pictures were not profitable.

Young testified in his own behalf and stated that until Munchnick informed him on May 6 or 7, 1977, that "Agony" had been confiscated he did not know that "Agony" had been exhibited at the Mayfair, and that until he viewed the film when it was shown at trial he had no knowledge of its content or character. He stated that he played no role in the day-to-day operations of Cal-Bud or the Mayfair in 1977. He denied that he had ever had a conversation with Uggeri concerning the policies or activities of the Mayfair.

Young testified that he and Munchnick had worked together in the early 1950's at United Artists Pictures Corporation, where Young had handled the booking of motion pictures into theatres in the New York metropolitan area. In 1954 he and Munchnick formed Cal-Bud. When Cal-Bud opened the Mayfair, the theatre did not at first earn a profit. In 1973 it still was not earning the kind of profit Young had hoped

for, and Young and Munchnick therefore discussed the possibility of exhibiting X-rated films. Young defined X-rated films as those having "more violence and more sexually explicit scenes than an R [Restricted to adults] film would have." (Tr. 200.) His 1973 discussion with Munchnick focused in particular on films such as "The Devil in Miss Jones," which had sexually explicit acts. In 1973, therefore, Cal-Bud began showing sexually explicit films. Young and Munchnick had policy discussions from time to time between 1973 and 1977; Young did not tell Munchnick not to exhibit any particular type of film.

Young went to the Mayfair frequently in 1977. He sometimes saw Uggeri there, but more often he frequented the theatre after midnight, when it was closed. Young was attempting to book live concerts into the Mayfair and would show the theatre to concert promoters on those late-night occasions. The trial judge asked Young whether he knew in 1977 what kind of films were being shown at the Mayfair. Young's answer was, "Sometimes yes, sometimes no. Sometimes I would pay attention to it, other times I really wouldn't." (Tr. 212.) The theatre displayed advertising pictures, called "one-cheek" advertising, to depict the nature of the film being shown. Young testified that he did "not really" ever go into the auditorium to see what kind of films the Mayfair was showing. And in his frequent visits with his son, a Cal-Bud employee who may have booked films for the theatre, Young had only general discussions about the Mayfair's films and did "not really" discuss the nature of the films that were being shown.

B. *The Instructions and the Verdict*

At the close of the prosecution's case and again at the close of all the evidence, Young moved unsuccessfully to dismiss the indictment on the ground that the state had failed to establish that he had knowledge of the film's content and character as required by § 235.05. In denying the first motion the trial court stated that "[t]here's a presumption in cases such as this" (Tr. 175), apparently referring to the presumption

stated in § 235.10(1). In denying the second motion the court stated that "the People have made out a case with respect to the presumption." (Tr. 234.)

In its charge to the jury, the trial court instructed the jury as follows on the element of scienter and the role of § 235.-10(1)'s presumption:

[The state is required to prove] [t]hat at the time they promoted such obscene material or possessed such obscene material with intent to promote, the defendants did so knowing its content and character. According to law, a person knows . . . the content and character of obscene material when he's aware of its content and character. The fact of knowledge on the part of a person who promotes obscene material or possesses obscene material with intent to promote it in the course of his business of the content and character of such material is often the secret operation of a person's mind. Therefore, the law permits, but does not require the jury to presume or infer knowledge in some circumstances.

According to law, a person who promotes obscene material or possesses obscene material with intent to promote it in the course of his business is presumed to do so with knowledge of its content and character. In other words, if a person promotes that which you find to be obscene, the law says he is presumed to do that knowing what's in it. Again, the law permits that, but does not require you to presume or infer knowledge in some circumstances. That means after a consideration of all of the evidence in this case, you may presume or infer from the defendants [sic] promotion of obscene material or their possession of obscene material with intent to promote it in the course of this business, that they promoted it or possessed it with intent to promote it with knowledge of its content and character, or you may reject such presumption or inference. However, the fact that you draw this inference does not shift to defendants any burden of proof whatsoever. The burden remains on the prosecution throughout the entire case.

(Tr. 329–30.) The jury found Young and Cal-Bud guilty of second-degree obscenity.

On appeal to the Appellate Division, Young argued, *inter alia,* that the evidence was insufficient to support the jury's verdict because § 235.10(1)'s presumption of scienter was unconstitutional as applied to Young's case. The Appellate Division affirmed the conviction, rejecting this argument with the following statement:

> In our view, the presumption contained in section 235.10 of the Penal Law, coupled with evidence of the defendant's management of and frequent presence in the theatre, was sufficient to establish his knowledge of the content and character of the film involved.

Young's motion for leave to appeal to the New York Court of Appeals was denied.

### C. *The District Court's Decision*

Having exhausted his state court remedies, Young commenced the present proceeding seeking a writ of habeas corpus on the ground that his conviction was constitutionally infirm. His petition did not challenge the sufficiency of the evidence that "Agony" was obscene or the standard by which it was judged to be obscene, but contended that there was insufficient evidence to prove beyond a reasonable doubt that he knew the content and character of the film and that the presumption provided by § 235.10(1) could not constitutionally compensate for the evidentiary deficiency.

The district court denied the petition on the ground that there was sufficient evidence to convict Young without the presumption of knowledge permitted by § 235.10(1). The court stated that

> [t]he only question . . . is could a reasonable juror conceivably and rationally find beyond a reasonable doubt that this defendant knew and the answer is yes, based upon what the average person knows about how small businesses are run.
>
> People who invest their money with fifty percent owners[,] who sign checks and come in and out, know what's going

on in the theatre. That's what the case comes down to.

(Oct. 14, 1982 hearing at 19). The court rejected the argument that the evidence was sufficient only to establish that Young knew "in general terms what was going on," stating that

> [t]he question is whether he knew this, this film, and the answer is yes. I think that a reasonable juror could find here, given this information,—it is a small corporation, small business, theatre, marquee, advertisement, and the average business man doesn't just put his money in and walk away.
>
> . . . .
>
> No, he is trying to make money out of it, he is not going to put in junk without having any idea of what's in it. I think it is a rational inference.

(*Id.* at 20.) This appeal followed.

### DISCUSSION

■ The standard to be applied in a federal habeas corpus proceeding when the claim is made that the petitioner has been convicted in state court on insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). This guiding principle recognizes that it is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Applying these standards, we conclude that a rational juror could have found beyond a reasonable doubt that Young promoted "Agony" and knew its content and character.

Preliminarily we note that although Young testified that he did not know "Agony" was being shown and that he knew nothing of its character and content, the jury was not required either to credit his

disclaimers of awareness[2] or to reject the more circumstantial evidence presented by the prosecution. *See, e.g., People v. Kirkpatrick,* 32 N.Y.2d 17, 26, 343 N.Y.S.2d 70, 77, 295 N.E.2d 753, 758 (quoting *Smith v. California,* 361 U.S. 147, 154, 80 S.Ct. 215, 219, 4 L.Ed.2d 205 (1959)), *appeal dismissed,* 414 U.S. 948, 94 S.Ct. 283, 38 L.Ed.2d 204 (1973): " 'Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial.' "

■ Viewing all of the evidence,[3] in the light most favorable to the prosecution, the jury could have found that in 1973 Young and Munchnick agreed to show films depicting sexually explicit acts; that the movies exhibited pursuant to that agreement included pornographic films; that Young was aware of this and expressly approved because pornographic films were more profitable than "regular" films; that Young signed checks in payment of the fees of persons who booked films into the Mayfair; that Young was present at the Mayfair two or more times during the week that "Agony" was exhibited there, including at least once when the theatre was open; and that the nature of "Agony" was openly displayed at the Mayfair with "one-cheek" advertising pictures. Young was a 50% owner of Cal-Bud and by far its highest-paid employee, and he admitted that he "sometimes" knew the kind of film being shown at the Mayfair. The jury was free to infer from all of the evidence that "Agony" was one of the films whose nature he knew.

■ In short, the jury was provided with sufficient evidence from which it could have inferred beyond a reasonable doubt that Young had caused the Mayfair to exhibit "Agony," that he knew the theatre was exhibiting "Agony," and that he knew the character and content of the film. Giving due deference to the province of the jury to resolve all conflicts in the evidence and draw all reasonable inferences, we conclude that the conviction may not be set aside on grounds of insufficiency of the evidence.

Nor was the jury's finding of guilt undermined by the trial court's use of the presumption provided in N.Y. Penal Law § 235.10(1). The provision in that section, that one who promotes obscene materials in the course of his business is presumed to know the content and character of those materials, creates merely a permissive inference of knowledge from the fact of business promotion. *See, e.g., Overstock Book Co. v. Barry,* 436 F.2d 1289, 1294 (2d Cir. 1970). Thus, the jury was instructed clearly that it could, but was not required to, infer scienter if it found such promotion, and was informed that the availability of this inference had no effect whatever of shifting any burden to the defendant.

Since § 235.10(1) creates a permissive, as contrasted with a mandatory, inference, its use did not offend constitutional norms if there was a rational connection between the fact of promotion and the to-be-inferred fact of knowledge, and if it could be said with substantial assurance that an inference of knowledge was more likely than not to flow from the proven fact on which the inference was made to depend. *Ulster County Court v. Allen,* 442 U.S. 140, 165, 99 S.Ct. 2213, 2228, 60 L.Ed.2d 777 (1979); *Leary v. United States,* 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969). We

**2.** The jury may, for example, have viewed Young's testimony that he did "not really" ever view films from the auditorium, and that he did "not really" discuss the nature of the films with his son who booked some of them, as equivocation.

**3.** The fact that the trial judge expressly mentioned the existence of the presumption in denying Young's motions to dismiss does not require us to ignore the circumstantial evidence that was presented to establish Young's knowl-

edge without resort to any presumption. Nor, in assessing the sufficiency of the evidence are we limited to a consideration of that produced by the prosecution, for "it is settled that a defendant who does not rest after the court fails to grant a motion to dismiss at the close of the People's case, proceeds with the risk that he will inadvertently supply a deficiency in the People's case." *People v. Kirkpatrick, supra,* 32 N.Y.2d at 21, 343 N.Y.S.2d at 73, 295 N.E.2d at 755.

have no hesitance in concluding that in general one who exhibits, agrees to exhibit, or advertises a film is more likely than not to know the film's character and contents. And we agree with the conclusion of the district court that the particular circumstances of the present case made it more likely than not that Young knew the nature of the film he promoted.

Accordingly, we conclude that the evidence was sufficient for a rational juror to find scienter beyond a reasonable doubt and that there was no constitutional error in the application of § 235.10(1). The judgment dismissing the petition for a writ of habeas corpus is affirmed.