829 F.2d 38
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tom HOLLIS, Jr., Petitioner-Appellant,
v.
CAMPBELL COUNTY DISTRICT COURT, Respondent-Appellee.
 No. 86-5311
 United States Court of Appeals, Sixth Circuit.
 September 11, 1987.
 
 Before KRUPANSKY, DAVID A. NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 A jury in Campbell County, Kentucky, found petitioner-appellant Hollis guilty of criminal facilitation of the distribution of obscene motion picture films. Mr. Hollis' conviction was affirmed on appeal by the Campbell County Circuit Court, and both the Court of Appeals and the Supreme Court of the Commonwealth declined to grant discretionary review. Mr. Hollis petitioned the United States Supreme Court for a writ of certiorari, but the petition was denied. Next Mr. Hollis filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Kentucky. A magistrate to whom the case was referred recommended that the petition be denied, and the district court adopted that recommendation. Mr Hollis appealed to this court, contending that the district court erred in failing to accept his argument that the Kentucky courts violated his rights under the United States Constitution by allowing him to be convicted on insufficient evidence. Believing that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found Mr. Hollis guilty beyond a reasonable doubt, we shall affirm the judgment of the district court.
 
 
 2
 * The case against Mr. Hollis arose out of his association with an establishment in Newport, Kentucky, called 'Cinema X.' As its name implies, this was a movie theater that showed sexually explicit pictures. Two police officers went into the theater and saw several movies that they believed were obscene. The officers obtained a search warrant and seized the films, taking them away in a trash bag. Criminal charges were brought against Mr. Hollis and three corporations associated with the Cinema X operation. One of the corporations, Happy Day, Inc., was convicted of distributing obscene material. Mr. Hollis, Brown Bear, Inc. (which owned the threater and had operated it until convicted in an earlier case of distributing obscene material) and Combined Entertainment Ventures, Ltd., were all charged with and convicted of facilitating the distribution of two obscene films. Happy Day was fined $10,000, and Brown Bear and Combined Entertainment Ventures were each fined $5,000. Mr. Hollis was fined $250 and was sentenced to 90 days in jail. Only the conviction of Mr. Hollis is before us here.
 
 
 3
 Mr. Hollis contends that because '[t]here was no evidence presented that Hollis had ever been inside the Cinema X Theater, or that he had any knowledge of the exhibition or content of the two films in question,' it was not shown that he had the necessary scienter. The evidence adduced at trial, however, indicated that Mr. Hollis acted as bookkeeper-management supervisor for the Cinema X operation pursuant to a contract under which Brown Bear had engaged 'the services of Hollis to supervise and disburse funds earned from the operation of various enterprises . . ..' The contract, a copy of which was received in evidence, provided that Mr. Hollis was to pay the bills and was
 
 
 4
 'permitted to . . . hire or discharge any employee whose job it is to handle monies taken in by the aforedescribed business enterprises, subject only to the requirement that the local manager of the aforedescribed business enterprise must consent to the action taken by Hollis and . . . hire, engage or contract with any accounting firms, business consultants, or individuals in order to insure the successful operation and management of any of the aforedescribed business enterprises.'
 
 
 5
 The contract prohibited Hollis from divulging, without the corporation's written consent, 'any and all information that may come to his attention, directly or indirectly, resulting from the carrying out of his duties herein, to any person, firm or corporation, including local, state and federal governments . ...'
 
 
 6
 Also received in evidence were a number of cancelled checks drawn by Mr. Hollis on a Brown Bear account in payment for films bearing titles such as 'Hot Honey,' 'Bad Penny--Double Your Pleasure,' 'Soft Places,' 'Other Side Julie,' 'Hot Lunch,' and 'Fiona on Fire.' (The title of each of the films mentioned was written on the face of the check drawn to pay for that film.) The two films as to which criminal charges were brought here did not have any titles at all; the jury having found the content of the films obscene,[1] this untitled material may fairly be characterized as a sort of generic obscenity--not an inappropriate product, perhaps, to be merchandised at a place named the 'Cinema X.' (Two other films seized at the same time as the generic films did have titles--'Candy Goes to Hollywood' and 'Erotic Adventures of Candy'--but the Commonwealth chose not to base any prosecution on them.)
 
 II
 
 7
 In Smith v. California, 361 U.S. 147 (1959), the Supreme Court held that an obscenity statute may not impose liability without proof of scienter. Speaking through Justice Brennan, the Court rejected an argument that a scienter requirement would render all obscenity statutes ineffective: '[e]yewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial.' Smith, 361 U.S. at 154.
 
 
 8
 In Hamling v. United States, 418 U.S. 87 (1974), the Court had this to say on the subject of scienter:
 
 
 9
 '[i]t is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the character and nature of the materials. To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law. Such a formulation of the scienter requirement is required neither by the language of [the statute in question] nor by the constitution.
 
 
 10
 'Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk.' United States v. Wurzbach, 280 U.S. 396, 399 . . . (1930).'
 
 
 11
 Hamling, 418 U.S. at 123-24.
 
 
 12
 Applying these principles to the case at hand, we believe that a rational trier of fact could properly have found that Mr. Hollis knew what kind of business Cinema X was engaged in and knew the character and nature of the films he was procuring for Cinema X. He might not have been certain that a Campbell County jury, if called upon to decide the question, would conclude that the two films for which he was prosecuted were obscene, but Mr. Hollis had no reason to assume that any jury would find either that the films were not obscene or that he was unaware of their character. He may not have been able to write the titles of those particular films on the checks with which he paid for them, the filmmakers apparently having lacked the wit to devise sufficiently suggestive titles, but Mr. Hollis would have been the man to pay for the films, as the jury could have found, because the evidence showed that his was the only authorized signature that appeared on the signature cards for the corporate checking accounts. In the context of the business in which Mr. Hollis was engaged, the very fact that the films were untitled could have been considered significant as far as scienter is concerned.
 
 
 13
 Mr. Hollis relies on six decisions from Texas state courts, the most notable of which are Acevedo v. State, 633 S.W.2d 856 (Tex. Crim. App. 1982), and Skinner v. State, 652 S.W.2d 773 (Tex. Crim. App. 1983). Acevedo is plainly distinguishable from the case at bar because the defendants in that case were merely theater concessionaires and cashiers; there was no evidence that they had anything whatever to do with the acquisition of an obscene film. The defendant in Skinner was a college student moonlighting as a cashier, concessionaire, and cleaning person at an adult theater. Here again, there was no evidence that the defendant had anything to do with the acquisition of the films exhibited at the theater.
 
 
 14
 Mr. Hollis was no mere concessionaire. He wrote the checks for the films, and it would not be irrational to find that he knew the nature of the merchandise he was buying. Under Hamling, there was ample evidence on which a rational jury could have found scienter. See Young v. Abrams, 698 F.2d 131 (2d Cir. 1983), where, applying the rationality standard set forth in Jackson v. Virginia, 443 U.S. 307, (1979), the court affirmed a denial of habeas relief in a factual setting similar to that presented here.
 
 
 15
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Both films were shown to the jury. In final argument the prosecutor had this to say on the issue of obscenity: 'Think for a minute, think back to last Friday morning when you were sitting in the Cinema X Theater; think back to the films, . . . think of what you saw. Think of what was portrayed on the screen there, murder, rape, sodomy, sexual intercourse, deviate sexual intercourse, flagellation [sic], numerous and repeated scenes of secretion of semen on the bodies, on the faces, in the mouths of the women in the films. Think of what you saw. I think it's appropriate that the films are contained in trash bags because that's what they are.'