(February 28, 2002)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LLOYD MOORE, Appellant. [738 NYS2d 332] —Judgment, Supreme Court, New York County (Bruce Allen, J.), rendered June 29, 2000, convicting defendant, after a jury trial, of four counts of grand larceny in the fourth degree, three counts of criminal possession of stolen property in the fourth degree, and one count of criminal possession of a controlled substance in the seventh degree and sentencing him, as a second felony offender, to concurrent terms of 2 to 4 years in prison on the grand larceny and stolen property convictions and to a conditional discharge on the narcotics conviction, unanimously modified, as a matter of discretion in the interest of justice, to the extent of dismissing the felony counts pursuant to CPL 470.20 (3), and otherwise affirmed.

We exercise our power to review the judgment in the interest of justice (*see*, CPL 470.05, 470.15 [3]; *People v Gray*, 86 NY2d 10, 22).

The People's evidence at trial consisted of the testimony of a complaining witness who was unable to find his wallet upon awakening in the subway station at 50th Street and Eighth Avenue early on December 4, 1999, and two police officers who recovered the wallet from defendant at 103rd Street and Central Park West between 29 and 49 minutes later. The witness testified that he entered the subway station at 1:30 A.M.,

after a night of drinking, and sat down on a bench to wait for the train. He placed his left elbow on the arm of the bench and rested his head on his left arm. His wallet was in the shallow right front pocket of his baggy jeans. When he awoke at 1:50 A.M., he realized that the wallet and its contents, approximately $70 in cash, two credit cards, his sister's ATM card, and his Metrocard and Social Security card, were missing.

The officers testified that they arrested defendant outside the subway station on the corner of 103rd Street and Central Park West at 2:19 A.M. Driving south on Central Park West, they had noticed him nervously looking up and down the street, and when they turned the corner they could see that he was rummaging through a wallet and throwing papers to the ground. Among the papers on the ground were a $10 bill and a $5 bill. The wallet contained two credit cards in the name of the complaining witness and an ATM card in his sister's name. The Metrocard and Social Security card were missing.

Defendant testified that he found the wallet on the ground outside the subway station at the corner of 110th Street and Eighth Avenue at approximately 12:50 A.M. on December 4, 1999. He had been at a friend's place at 112th Street and Seventh Avenue since some time after 10:30 P.M. and was headed into the station when he saw the wallet. He then took the train to 103rd Street.

We reverse the judgment to the extent that it convicts defendant of grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree, because there is no valid line of reasoning and permissible inferences from which a reasonable person could conclude that every element of those offenses was proved beyond a reasonable doubt (*see, People v Bleakley*, 69 NY2d 490, 495). A person is guilty of grand larceny in the fourth degree "when he steals property" and the property "is taken from the person of another" (Penal Law § 155.30 [5]) or consists of a credit card or debit card (Penal Law § 155.30 [4]). A person is guilty of criminal possession of stolen property in the fourth degree "when he knowingly possesses stolen property" and the property consists of a credit, debit or public benefit card (Penal Law § 165.45 [2]). The People introduced no direct evidence that established when or how defendant came into possession of the wallet, that he took it or knew that it had been taken from the complaining witness, or that the wallet indeed was stolen, rather than lost. The only circumstantial evidence of defendant's guilt was his possession of the wallet at the time of his arrest.

The jury may have inferred from the fact that defendant was

holding the wallet at 2:19 A.M. outside the subway station at 103rd Street that he took it from the complaining witness between 1:30 and 1:50 A.M. in the 50th Street station, traveled uptown on the subway and began, or was still, rifling through the wallet when he reached street level outside the 103rd Street station. But it is equally reasonable to infer that defendant found the wallet uptown after another person took or found it, removed some of its contents and discarded it. At the time the police found defendant rifling through the wallet, most of the cash the complaining witness said was contained in it, as well as his Metrocard and Social Security card, was missing. This is more consistent with another person's having stolen or found the wallet and having disposed of those items. In light of this tenable innocent explanation, the inference of guilt from the fact of possession is not "so sure as to constitute proof beyond a reasonable doubt of the defendant's culpability" (*see, People v Keelan*, 189 AD2d 625, 627 [internal quotations and citations omitted], *lv denied* 81 NY2d 972).

Nor is the inference of guilt compelled by the fact that the interval between the complaining witness's realization that his wallet was missing and the officers' discovery of the wallet in defendant's hands was at most 49 minutes and may have been only 29 minutes, in the absence of any evidence placing defendant at or near 50th Street or establishing that no other persons were present on that midtown station platform. The People maintain that the evidence was sufficient to support the jury's finding that defendant stole the wallet because, in addition to being in possession of it shortly after it was missed, at a distance close enough to show that "he could have stolen it," defendant was hunched over the wallet and discarding its contents, and he appeared nervous and told the police when questioned that he was doing "nothing." The People argue that these are the actions of a thief and evince defendant's consciousness of his guilt. But a showing that defendant could have stolen the wallet falls fatally short of proof beyond a reasonable doubt that he did steal it, and defendant's actions are equally consistent with his having found the wallet (*see, Keelan, supra* at 627).

The People contend that this case reduces to a question of credibility, and that, in rejecting defendant's false testimony, the jury properly viewed it both as "strong evidence of consciousness of guilt" and as "substantive evidence confirming the negative inferences to be drawn from defendant's recent and exclusive possession of the stolen wallet." However, unlike the defendants' evidence in *People v Kirkpatrick* (32 NY2d 17,

21, *appeal dismissed* 414 US 948), which the People cite, defendant's testimony did not "inadvertently supply a deficiency in the People's case." In *Kirkpatrick*, the issue was whether the defendants, booksellers who were convicted of selling an obscene magazine, knew that the contents of the magazine were obscene. The Court observed that most, if not all, of the evidence relating to the defendants' knowledge was introduced by them. In their testimony, the defendants admitted to glancing at the ending pages of issue No. 4 of "Zap" and looking at the "garish" cover bearing the legend "Adults Only," and ordering and reordering various issues, including "Zap No. 4," and personally selling 25 to 30 copies of that issue (*id.* at 22). The Court noted that the characteristic drawings of the magazine were the same from the first to the last page, "so that any sampling would have been illustrative of the bulk" (*id.*).

In contrast, here defendant testified that after he found the wallet on the ground outside the 110th Street station, he entered the station and chatted with the token clerk, whom he knew, for 30 or 45 minutes. He then took the subway one stop to 103rd Street to see another girlfriend. On the way, he looked through the wallet and found the Social Security card but no cash. When he reached the street, defendant lay his jacket and the wallet on the ground and began urinating on a wall on the corner of 103rd Street and Central Park West. At the sound of "guns clicking," he turned around and saw the two police officers. This testimony added nothing to the evidence of what happened to the complaining witness's wallet on December 4, 1999, or what defendant knew about it. Given that the evidence provides a reasonable innocent explanation for defendant's possession of the wallet, i.e., that he found it after someone else discarded it, the competing inference that he took the wallet from the complaining witness cannot be found beyond a reasonable doubt and is therefore impermissible (*see, People v Castillo*, 47 NY2d 270, 277).

As the Court of Appeals has warned, "[t]he danger * * * with the use of circumstantial evidence is that of logical gaps—that is, subjective inferential links based on probabilities of low grade or insufficient degree—which, if undetected, elevate coincidence and, therefore, suspicion into permissible inference" (*People v Cleague*, 22 NY2d 363, 367). Whether defendant's testimony is accepted or rejected, in whole or in part, the gaps in the People's evidence can only, impermissibly, be filled by conjecture. Accordingly, the evidence is legally insufficient to support the verdict. Concur—Mazzarelli, J.P., Rosenberger, Ellerin, Wallach and Marlow JJ.