James Victor McMAHON, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–81–220CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 21, 1982.
Discretionary Review Refused
April 21, 1982.

Clyde Woody, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before J. CURTISS BROWN, C. J., and JUNELL and PRICE, JJ.

JUNELL, Justice.

This is an appeal from a conviction for the offense of commercial obscenity. Appellant was charged by information with selling obscene materials. On September 20, 1978, while employed as a clerk at Bellaire News in Harris County, Texas, appellant sold a film entitled "Dream Come True" to Houston police officer C. M. Braun. Having waived jury trial, appellant was found guilty by the court and was sentenced to a fine of $500 and 45 days confinement in the Harris County jail. Sentence was probated for 180 days.

We have considered and overrule the nine grounds of error which appellant presents for review. We affirm the judgment of the court below.

In his first ground of error appellant argues that the trial court committed reversible error in overruling appellant's Motion to Quash Information in that Texas Penal Code Annotated section 43.21 on its face and as applied through section 43.23 is unconstitutionally overbroad and violative of the First and Fourteenth Amendments to the United States Constitution because (1) it fails to apply the "contemporary community standards" test to the second and third prong of its definition of obscenity, but instead applies that test only to the appeal to the prurient interest and (2) it

fails to require that the material be "taken as a whole."

*Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973) sets forth the following basic guidelines for the trier of fact in determining whether expression goes beyond the limits of Constitutional protection:

(a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest . . . (cites omitted); (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

Section 43.21 of the Texas Penal Code Annotated (Vernon Supp.1980–81) provides in pertinent part:

(1) "Obscene" means having as a whole a dominant theme that:

(A) appeals to the prurient interest of the average person applying contemporary community standards;

(B) depicts or describes sexual conduct in a patently offensive way; and

(C) lacks serious literary, artistic, political, or scientific value.

In applying the Texas statute the fact finder must determine what is or is not acceptable according to contemporary community standards before determining whether particular material is in fact obscene. *Carlock v. State*, 609 S.W.2d 787 (Tex.Cr.App.1980). In our opinion the Texas statute in effect at the time of the instant offense complies with the *Miller* standard. We see no significant difference between requiring that the material be "taken as a whole" to assess the dominant theme and "having as a whole a dominant theme." We therefore overrule appellant's first ground of error.

In his ninth ground of error appellant contends that the evidence is insufficient to show that appellant "knew the content of the material" as charged in the information.

■ In ruling on the unconstitutionality of an obscenity ordinance which eliminated the requirement of knowledge of the contents of a book on the part of the seller, the United States Supreme Court discussed in general the scienter requirement in regulating distribution of obscene material and said:

Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial.

*Smith v. People of the State of California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). The Texas Court of Criminal Appeals has ruled that circumstantial evidence is sufficient to support a jury's verdict that a defendant had knowingly distributed or exhibited obscene material within the meaning of the scienter requirement of article 527 of the Texas Penal Code, the Texas commercial obscenity statute in effect prior to the version of article 43.23 which was in effect at the time of the instant offense. *Parrish v. State,* 521 S.W.2d 849 (Tex.Cr. App.1975); *Volkland v. State,* 510 S.W.2d 585, 587 (Tex.Cr.App.1974.) In order to sustain an article 527 conviction for knowingly exhibiting obscene matter, it is not necessary to show that the defendant actually looked at the particular magazine introduced into evidence; it is sufficient to demonstrate that the defendant knew the type of business he was in and the type of material he was exhibiting for sale. *Id.* As of September 20, 1978, the date of the offense charged, article 43.23 provided in pertinent part, as follows:

(a) A person commits an offense if, knowing the content of the material:

(1) he sells, commercially distributes, commercially exhibits, or possesses for sale, commercial distribution, or commercial exhibition any obscene material;

The statute does not define "knowing the content of the material." In our opinion that language requires knowledge of the general subject matter of the material. It is not reasonable to think the Legislature intended to require proof that the defendant actually viewed the particular film or material involved when neither the prior nor the subsequent statute made such a requirement; the 1979 amendment to article 43.23 provides that "a person who promotes ... obscene material ... in the course of his business is presumed to do so with knowledge of its contents and character." Tex.P.Code Ann. art. 43.23 (Vernon Supp.1980–81).

■ Police Officer Braun testified as to the layout of Bellaire News and described the store as containing two sections, the front section containing "regular magazines" for sale and the back section containing the "hard core magazines and films" and "sexual rubber goods ... dildoes and sex blow-ups, things of that nature" on racks. He described the counter where appellant worked as having access to both sides of the store with a clear view of both sections. The box in which the film "Dream Come True" was sold was introduced into evidence as State's Exhibit 1. On the front of that box are photographs of 2 females with bare breasts and the lower portion of a nude male; although the genital area of the photograph is covered over, it is apparent that it depicts persons engaging in the act of fellatio. Officer Braun also testified that appellant sold him a copy of "Blow" magazine at the same time appellant sold Officer Braun the film. The front and back covers of that magazine were introduced into evidence as State's Exhibit 3. The cover of that magazine displays a photograph of a female performing fellatio on a nude male. According to Officer Braun, State's Exhibits 1 and 3 were sold enveloped in "fairly thin" plastic through which the pictures on the covers were visible. Appellant denied knowing the contents of the film or other items he was selling but did testify that there was a sign on the front door of Bellaire News saying "No Minors," that he watched both sections of the store from the cash register where he worked, and estimated that he handled about 150 transactions from the back section during the week he worked

there. In our opinion the evidence is sufficient to show that, within the meaning of the statute, appellant knew the content of the material he was selling.

In his second through fourth grounds of error appellant contends that the trial court committed reversible error by denying motions to quash information and arrest warrant because (1) the affidavit supporting the arrest warrant did not contain sufficient facts for an independent finding of probable cause by the magistrate, (2) the arrest warrant failed to designate the office of the signing magistrate, and (3) the information and arrest warrant failed to sufficiently describe the film which constitutes the basis of the charge against appellant.

 Appellant's first argument focuses on the alleged failure of the officer's affidavit to show probable cause that appellant knew the content of the film. The affidavit states:

PROBABLE CAUSE: Your affiant is C. M. Braun, an Houston Police Officer assigned to the Vice Division. On September 20, 1978 your affiant purchased the above film from the suspect at 5887 Bellaire, Houston, Harris County, Texas.

After purchasing the film your affiant viewed it at the Houston Police Department Vice Office. Your affiant states the film contains acts of sexual intercourse and deviate sexual intercourse throughout the film showing two females and one male. After purchasing the film your affiant pointed him out to J. L. Calicote, an Houston Police Department officer who learned the identity of the suspect, and told your affiant his name is James Victor McMahon.

As we have already discussed, knowledge within the meaning of the applicable statute may be inferred from surrounding facts and circumstances. While our determination of the sufficiency of an arrest warrant affidavit's statement of probable cause is limited to the four corners of the affidavit, we interpret such affidavits in a common sense and realistic manner, and the magistrate who reviews such an affidavit may draw inferences from the facts contained in

it. *Jones v. State*, 568 S.W.2d 847, 855 (Tex.Cr.App.1978). The affidavit shows that appellant personally sold the film to the affiant. In our opinion the magistrate could properly find probable cause from the facts contained in the affidavit and inferences therefrom.

 When a warrantless arrest is unlawful because it is made without sufficient probable cause but no evidence obtained incident to the unlawful arrest is introduced, reversal of a judgment of conviction is not required. *Johnson v. State*, 548 S.W.2d 700, 706 (Tex.Cr.App.1977); *Stiggers v. State*, 506 S.W.2d 609, 611 (Tex.Cr.App.1974); *Robinson v. State*, 502 S.W.2d 819, 820 (Tex.Cr.App.1973); *McDonald v. State*, 513 S.W.2d 44, 45 (Tex.Cr.App.1974). The State introduced no confession or evidence obtained as a result of search or seizure incident to the arrest. Therefore, even if the arrest warrant were invalid and the arrest unlawful, we would not be required to reverse this conviction.

 As to appellant's second contention, the arrest warrant shows the signature of Jack Treadway over the printed words "Magistrate of Harris County." In our opinion that language sufficiently names the office as required by Article 15.02(3) of the Texas Code of Criminal Procedure Annotated (Vernon 1977).

Appellant's third contention is that the information and arrest warrant do not properly describe the *kind* of material involved as an *8 mm* film.

If known, personal property alleged in an indictment or information must be identified by name, kind, number, and ownership. Tex.Code Crim.Pro. art. 21.09 (Vernon Supp.1980–81) & art. 21.23 (Vernon 1966).

 The information and arrest warrant describe the material appellant sold to Officer Braun as "one film, 'Dream Come True' ..." Along with photographs and other words and numbers such as the price and name, "Regular-8" is printed on the box in which the film was sold. In our opinion the description in the information and arrest warrant fulfills the statutory

requirement; it describes generically the kind of property alleged to have been sold by appellant (film), the number alleged to have been sold (one), and the name of the film ("Dream Come True"). The description suffices to apprise appellant of the charge against him.

We overrule appellant's second, third, and fourth grounds of error.

Appellant complains in his fifth through seventh grounds of error that the court erred in admitting evidence of extraneous offenses by allowing into evidence State's Exhibit 3, the front and back covers of "Blow" magazine.

■ The general rule which prohibits evidence of extraneous offenses has well recognized exceptions. Extraneous offenses may become admissible if part of the res gestae or to show identity of person or crime, intent, motive, scienter or system, or to discredit the accused when he testifies in his own behalf or to show his failure to have performed, or to controvert a defensive theory advanced by him. *Frison v. State*, 473 S.W.2d 479, 483 (Tex.Cr.App. 1971); *Blankenship v. State*, 448 S.W.2d 476, 480 (Tex.Cr.App.1969). Under such exceptions to the rule evidence of similar transactions becomes admissible even though it does not show the commission of other offenses. *Cage v. State*, 167 Tex. Cr.R. 355, 320 S.W.2d 364, 376 (1958); *Hart v. State*, 447 S.W.2d 944, 951 (Tex.Cr.App. 1969).

■ The record reveals that the covers of "Blow" were introduced into evidence to rebut and impeach appellant's testimony that he had no knowledge of the content of the film or of what kind of material he was selling from the back room at Bellaire News. Officer Braun testified that he purchased "Blow" from appellant at the same time he purchased the film "Dream Come True" and that appellant handled the magazine to look for the price tag and that the photographs on the cover of that magazine, described above, were visible through the plastic covering. Appellant argues that in order to use the magazine to show knowl-edge the State must introduce the entire magazine and show it to be obscene. We disagree. There was no attempt to prosecute appellant for sale of the magazine; the State did not have to prove the commission of such an offense. In our opinion the court properly admitted the cover of "Blow" to discredit appellant's testimony.

Grounds of error five, six, and seven are overruled.

Finally, appellant argues that the trial court committed reversible error in denying appellant's Motion to Dismiss for want of a speedy trial.

The Texas Speedy Trial Act provides, in pertinent part:

Section 1. A court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

\* \* \* \* \* \*

(3) 60 days of the commencement of a criminal action if the defendant is accused of a misdemeanor punishable by a sentence of imprisonment for 180 days or less or punishable by a fine only.

\* \* \* \* \* \*

Sec. 2. . .

(b) If a defendant is to be retried following a mistrial, an order granting a new trial, or an appeal or collateral attack, a criminal action commences for purposes of this article on the date of the mistrial, the order granting a new trial, or the remand.

\* \* \* \* \* \*

Sec. 4. In computing the time by which the state must be ready for trial, the following periods shall be excluded:

\* \* \* \* \* \*

(3) a period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel, except that a defendant without counsel is deemed not to have consented to a continuance unless the court advised him of his right to a speedy trial and of the effect of his consent;

\* \* \* \* \* \*

Tex.Code Crim.Pro.Ann. art. 32A.02 (Vernon Supp.1980–1981).

The Texas speedy trial scheme addresses itself to prosecutorial delay rather than delay resulting from the judicial process as a whole. The standard for dismissal under Art. 32A.02 depends upon preparedness of the prosecution for trial and does not encompass delay by the trial court and its docket. *Barfield v. State,* 586 S.W.2d 538, 541 (Tex.Cr.App.1979). The Court of Criminal Appeals has held that Art. 32A.02 does not require the State to show readiness unless a defendant files motion to dismiss for failure to adhere to the provisions of that statute; the State's declaration of readiness is a prima facie showing of conformity to the Act but can be rebutted by evidence demonstrating that the State was not ready for trial during the Act's time limits. *Id.* at 542.

The record reveals that this case was originally filed by information as Cause No. 535,195 on September 29, 1978. Appellant was arrested on October 3, 1978, and the case set for October 13, 1978. On that date the case was reset at the request of appellant to October 26, 1978. On October 26 the case was reset at the State's request to November 3, 1978. At appellant's request the case was reset from November 3, 1978, to December 1, 1978. On December 1, 1978, appellant entered a plea of no contest to the charges and the court assessed punishment. Appellant moved for new trial and that motion was set for hearing for December 21, 1978. On December 21, 1978, motion for new trial was granted. From the date the information was filed, September 29, 1978, through December 21, 1978, the only delays attributable to the State were 14 days from September 29 to October 13 and 8 days from October 26 to November 3, for a total of 22 days. Even if the period from December 1 (when appellant entered his plea of no contest) to December 21 (when new trial was ordered) were assessed against the state, the total does not exceed the 60 days allowed under Art. 32A.02. When new trial was ordered on December 21, 1978, a new criminal action commenced for purposes of computing time under Art. 32A.02. Tex.Code Crim.Pro.Ann. Art. 32A.02 § 2(b) (Vernon Supp.1980–81). At appellant's request on December 21, 1978, the case was set for motions and new trial on March 12, 1979; again at appellant's request it was reset to May 22, 1979. On May 15, 1979, the State refiled cause No. 535,195 as cause No. 554,005 and bond was transferred to the new cause number. On May 22, 1979, the court was in trial on a lower cause number (No. 532,378) and this case was reset by operation of law to July 18, 1979. The case was ultimately tried on July 18, 1979. Appellant was represented by counsel at all resettings. From the date new trial was ordered on December 21, 1978, to the date of trial, July 18, 1979, all delays were attributable to appellant or the trial court's docket; no delays were attributable to the State. Moreover, contrary to appellant's contention that the State was not ready for trial until July 18, 1979, the record reveals that the State announced ready on May 22, 1979. At the hearing on appellant's motion to dismiss the prosecutor stated that "The State was ready on [May] 22nd to try this case, and has been ready every date since that date to try this case." The Court stated in the record that the Court was ready and the State announced ready at 8:30 a. m. on May 22, 1979, and that defense counsel came in at 1 p. m. that day and signed a reset form. The record reveals no evidence to rebut this statement of readiness. We hold that the requirements of Art. 32A.02 were met and the State was shown to be ready for trial within the statutory time limit. We overrule appellant's eighth ground of error.

The judgment is affirmed.