**Carl Lee DAVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 642–82.**

Court of Criminal Appeals of Texas,
En Banc.

May 4, 1983.
Rehearing Denied Oct. 19, 1983.

Randy Schaffer, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Timothy G. Taft and Brad Beers, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

---

1. Section 43.23(e) of the Penal Code provides as follows:

    (e) A person who promotes or wholesale promotes obscene material or an obscene device or

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

Carl Lee Davis, appellant, was charged by complaint and information with promoting obscenity by *exhibiting* to G.P. Hugo an obscene film entitled "Little Yummy." The record reflects that at the time Hugo was a Houston police officer engaged in undercover vice operations. Appellant was found guilty on a plea of not guilty and stipulated evidence after a bench trial. The trial court assessed punishment at confinement in the Harris County jail for three days and a fine of $750. The Waco Court of Appeals affirmed appellant's conviction in an unpublished opinion. We granted appellant's petition for discretionary review to review the decision of the Court of Appeals, and consider and decide the validity of the presumption contained in V.T.C.A., Penal Code, Section 43.23(e),[1] which the Court of Appeals applied to this cause. We will reverse the judgment of the Court of Appeals and remand the cause to the trial court for it to enter a judgment of acquittal.

In pertinent part, the information in this cause alleges that appellant "did then and there unlawfully and knowing the content and character of the material, intentionally *exhibit* to G.P. HUGO obscene material, namely, one film entitled 'LITTLE YUMMY', which depicts patently offensive representations of sexual intercourse and sodomy." [Emphasis Added].

V.T.C.A., Penal Code, Sections 43.21 and 43.23, provides that one of the ways a person may violate the obscenity law is by promoting obscene material. Section 43.21(a)(5) states that the word "promote" means the following: "to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, *exhibit,* or advertise, or to offer or agree to do the same." [Emphasis Added].

possesses the same with intent to promote or wholesale promote it in the course of his business is presumed to do so with knowledge of its content and character.

We believe that a brief summary of the facts should be stated. The stipulation of evidence reflects that G.P. Hugo, a Houston police officer, while engaged in undercover vice operations, went to the Adultz News Bookstore, which is located at 2425 West Holcombe in Houston.[2] The bookstore was open to the general public. There was no admission charge to enter the store. After Hugo entered the store, he saw appellant "behind the counter in the front area of the store. He was the only employee present in the store. And the store appeared to be under his exclusive control, care, and custody." The area where appellant was situated contained books and magazines. We are not, however, informed of the character or content of the books and magazines. Hugo did not engage appellant in conversation but, instead, went down a hallway of the store and subsequently saw "15 or 16 separate peep show booths. These booths were located in the rear of the store, and were not visible from the counter area. Each booth was very small, and contained a movie projector that could be activated by placing a coin in a machine inside the booth." The record neither reflects nor indicates whether the projectors in the booths, other than the one Hugo eventually went inside of, contained film or, if so, what the character and content of the films located inside the projectors of the other booths may have been. Hugo thereafter went to where appellant was situated and obtained change from appellant. However, we are not informed how much change he obtained or received. Hugo thereafter went to "booth number 12," where he placed a quarter into a machine, which activated the projector. Hugo subsequently put a total of five quarters into the machine so that he could view the entire film entitled "Little Yummy," which lasted a total of approximately six minutes. Hugo, through the stipulated testimony, stated that appellant was never present in or outside of "booth number 12," where he viewed the film, and had nothing whatsoever to do with activating or operating the projector. Several days later, Hugo returned to the business establishment with a search warrant and seized the film, "Little Yummy," which was still in the projector. By virtue of his continued and sole presence in the store, Hugo assumed appellant was still an employee of and in charge of the store. Appellant was not arrested at that time, but was permitted to post bail the next day.

The State, in the direct appeal, and the Court of Appeals in its opinion affirming appellant's conviction, placed great emphasis upon the facts that the store was open to the general public and that appellant had given Hugo change. The Court of Appeals stated the following: "It is obvious from the evidence that without defendant's keeping the adult bookstore open to the public and making change for those who patronized the peep shows in the back, that the film could not have been exhibited to the officer in this case." Contrary to the State and the Court of Appeals, we find little substance in the fact that appellant gave Hugo an unknown amount of change. There is nothing in the record which would reflect or indicate that a restriction of any kind was placed on how the change would be spent. There is also nothing in the record to reflect or indicate that a person could not have gone inside the bookstore, *with* change, gone straight to one of the peep show booths, inserted a quarter into the machine, which would have activated the projector, viewed a film, and never have had contact with the appellant. Likewise, the record indicates that a person could have entered the bookstore solely for the purpose of obtaining or securing change to be used for purposes other than to activate one of the machines in the peep show section of the bookstore. There is also nothing in the record to reflect or indicate that any patron of the bookstore was ever directed by posted sign or otherwise to the area where the peep show booths were located. As previously noted, there was no admission fee

**2.** Although we are not given a graphic description of the lay-out of the bookstore, it appears that it closely resembles the lay-out described in *Green v. State,* 566 S.W.2d 578, 588–589 (Tex.Cr.App.1978).

charged to enter the bookstore, nor was one required to be paid in order to remain inside the bookstore once a person had entered the bookstore. Although there was a posted sign on the front door, which read "You must be 18 to enter store," there was nothing posted on the outside of the store which would have indicated what might have been on the inside of the store. The record does not reflect or indicate whether it was possible to see the inside of the store from the outside. By the record, a person would not have the faintest idea of what he was going to view on the screen, prior to the time he inserted a quarter into the machine. There is also nothing in the record to establish that appellant ever had anything whatsoever to do with the peep show booths, the machines inside the booths, the projectors inside the booths, and the films, if any, that were inserted into the projectors. Other than his mere presence, and having the care, custody, and control of the premises, there is nothing in the record to reflect or indicate that appellant was "exhibiting" the film to Hugo.

■ The mere act of the appellant allowing the business establishment to be open to the general public does not, without more, constitute any violation of the law. Nor does the mere giving of change constitute a violation of the law. Nor does a combination of both establish appellant's guilt of the allegation in the information. There must be more. The State had the burden to establish that appellant, either individually or as a party, directly or by circumstantial evidence, "exhibited" the film entitled "Little Yummy" to Hugo, *and in doing so he knew the character and content of the film.*

From the above, it becomes readily apparent to us that the only way one could conclude that appellant had knowledge of the character and content of the film entitled "Little Yummy," which is a necessary element of the offense of exhibiting obscene material to another, is through the presumption contained in subsection 43.-23(e), which presumption appellant claims is unconstitutional, facially and as applied to this cause.

The Court of Appeals, using the presumption included in V.T.C.A., Penal Code, Section 43.23(e), i.e., "A person who promotes . . . or possesses obscene material . . . with intent to promote it . . . in the course of his business is presumed to do so with knowledge of its content and character," overruled appellant's ground of error that the evidence was insufficient to establish that he had knowledge of the content and character of the obscene film entitled "Little Yummy."

■ We agree with appellant that there is insufficient direct or circumstantial evidence to establish that he had knowledge of both the content and character of the film entitled "Little Yummy." As previously noted, there is not any direct evidence to reflect that appellant ever came into contact with "Booth 12," or with the projector, or with the film entitled "Little Yummy," that was inside the projector of "booth number 12." Outside of his mere presence in a managerial capacity, there is not any circumstantial evidence to link appellant to the booth, the projector, or the film. Nor is there sufficient evidence in this cause to invoke and apply the law of parties. See V.T.C.A., Penal Code, Chapter 7.

Because of the manner in which the Court of Appeals disposed of the ground of error appellant raised, as well as the number of opinions by other Courts of Appeals, which have discussed the validity and applicability of the above presumption, reaching both pro and con results, we will discuss and decide the validity of the presumption.

The Supreme Court of the United States, in *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), almost twenty-four years ago, declared that a Los Angeles municipal ordinance imposing strict or absolute criminal liability upon a bookseller found in possession of obscene material was unconstitutional because it did not require the element of knowledge or scienter. Justice Brennan, the author of the opinion, was careful to point out that one of the reasons the Court so held was because "the usual doctrines as to the separability of constitutional and unconstitutional applications of

statutes may not apply where their effect is to leave standing a statute patently capable of many unconstitutional applications, threatening those who validly exercise their rights of free expression with the expense and inconvenience of criminal prosecution ... [S]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser." 361 U.S. 151, 80 S.Ct. 217, 4 L.Ed.2d 210. The Court further pointed out that although it had held that obscene speech and writings are not protected by the First Amendment, this did not mean that States had the power to restrict the dissemination of books which are not obscene. "[A]nd we think this ordinance's strict liability feature would tend seriously to have that effect, by penalizing booksellers, even though they had not the slightest notice of the character of the books they sold." In comparing sanctioned strict criminal liability, such as where food may be sold by a person without the knowledge that it has been contaminated, with imposing strict criminal liability on the exercise of the freedoms of speech and press, as guaranteed by the First Amendment, the Court pointed out that "the constitutional guarantees of the freedom of speech and of the press stand in the way of imposing a similar requirement on the bookseller ... By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of its contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature ... Every bookseller would be placed under an obligation to make himself aware of the contents of every book in his shop. It would be altogether unreasonable to demand so near an approach to omniscience.... And the book-

seller's burden would become the public's burden, for by restricting him the public's access to reading material would be restricted. If the contents of bookshops and periodical stands were restricted to material of which their proprietors had made an inspection, they might be depleted indeed. The bookseller's limitation in the amount of reading material with which he could familiarize himself, and his timidity in the face of his absolute criminal liability, thus would tend to restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly. The bookseller's self-censorship, compelled by the State, would be censorship affecting the whole public, hardly less virulent for being privately administered. Through it, the distribution of all books, both obscene and not obscene, would be impeded." 361 U.S. 154, 80 S.Ct. 219, 4 L.Ed.2d 210–211. In declaring the ordinance unconstitutional, however, the Court did not hold that States were not free to impose a particular mental element necessary to convict, but instead left this resolution to the States, subject to review.

■ The Fourteenth Amendment to the United States Constitution has made applicable to the States of the Union the First Amendment's guarantee of free speech and expression. *Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). Obscenity, of course, is not protected by the First Amendment, but all written material and material which may be viewed on a screen is presumptively protected by the First Amendment.

■ "[M]aterial dealing with sex in a manner that advocates ideas ... or that has literary or scientific or artistic value or any form of societal importance may not be branded as obscenity and denied the constitutional protection." *Jacobellis v. Ohio,* 378 U.S. 184, 191, 84 S.Ct. 1676, 1680, 12 L.Ed.2d 793 (1964). Such a film as here is presumptively within the ambit of the constitutional guarantees of freedom of speech and of the press. *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1951). However, once the determination is made

that the film is obscene, it no longer comes under the protective wings of the First Amendment. This Court has made the independent determination, after viewing in its entirety the film entitled "Little Yummy," whether this film is constitutionally obscene. We have concluded that this film is both factually and constitutionally obscene. See *infra*. For this Court's discussion regarding the decision of the Supreme Court of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), which stated the test the States of the Union must follow when they seek to regulate or control obscenity, see *Andrews v. State*, 652 S.W.2d 370 (Tex.Cr.App.1983).

When considering the validity or the applicability of a statutory presumption that may impinge or infringe upon First Amendment freedoms, we must closely and carefully scrutinize and examine such a presumption before it can ever be upheld and sustained.

The Texas statute dealing with obscenity does contain the element of scienter, or knowledge. Thus, the statute does not run afoul of the express holding of *Smith v. California*, supra, that a mental element is mandated in obscenity cases. If the only issue before this Court was whether the State established, either by direct or circumstantial evidence, that appellant knew the content and character of the obscene film entitled "Little Yummy," our job would be quite simple and easy, because the State failed in this regard. However, by the use of the presumption, it unquestionably proved the knowledge element of the allegation in the information.

■ We find that in light of *Smith v. California*, supra, the presumption provided by Sec. 43.23(e) must fall. Legislation which sanctions conviction of a bookseller, or his employee, without any proof whatsoever that he knew or was familiar with the nature of the material that was exhibited is afflicted with precisely the same vice and produces the same objectionable results as the ordinance struck down in *Smith v. California*, Id. "The trouble with this procedural

tactic is that it does not come to grips with the problem of self-censorship raised in the *Smith* case, namely, that the bookseller will tend to limit his stock to books [in this instance, films] which he has read [or viewed] and can guarantee." *People v. Kirkpatrick*, 32 N.Y.2d 17, 343 N.Y.S.2d 70, 83–84, 295 N.E.2d 753, 763 (New York Ct. App.1973) (Fuld, Chief Justice, Dissenting Opinion). *Smith* controls the disposition we must make of this cause.

■ The obvious and inherent evil in the presumption, even if called a permissive or rebuttable one, is that no matter how large his establishment, or how numerous and varied the publications or the films that may be on his shelves or inside the premises, an owner, proprietor, exhibitor, manager, or clerk is subject to conviction solely because of the presumption. Closely read, in conjunction with the offense itself, the presumption actually creates or makes the offense of promotion of obscenity a strict criminal liability offense, as to knowledge of the content and character of the material. The offense in this instance is that appellant, knowing its content and character, exhibited a movie film, which has now been determined to be obscene. Appellant's guilty "knowledge" of the character and content of the film has been supplied through the presumption, by the mere fact of exhibiting the film to Hugo, assuming arguendo that appellant did "exhibit" the film to Hugo. Thus the statute, with the presumption attached thereto, for all intents and purposes, makes mere possession or the promotion of an obscene film a strict criminal liability offense. This is what *Smith v. California*, supra, does not either directly or indirectly countenance, but, instead, condemns.

We are aware of the usual rules governing statutory presumptions. However, we believe that because the statutory presumption in this instance is applicable to a First Amendment right that this makes the usual rules governing construction of presumptions inapplicable to this cause. Our research has yet to reveal a single instance where a statutory presumption, such as this

one, which could infringe upon the freedoms of speech or press, has, standing alone, ever survived constitutional challenge or muster, and neither the Court of Appeals nor the State direct our attention to such a case.

For a well written discussion of the usual rules governing the construction of the usual and ordinary presumptions, the reader is directed to the opinion of the Houston First Court of Appeals in *Skinner v. State,* 647 S.W.2d 686 (Tex.App.—Houston [1st] 1982), which decision was reversed by this Court for other reasons. See *Skinner v. State,* 652 S.W.2d 773 (Tex.Cr.App.1983). The Court of Appeals in *Skinner,* supra, discussed not only the usual rules governing the construction of presumptions, but also discussed the above presumption and held it was unconstitutional. We agree with the Houston First Court of Appeals. The presumption is constitutionally invalid and impermissible, and, in conjunction with the reasons we give, we adopt by reference what the Houston First Court of Appeals has stated in its opinion regarding the validity of Sec. 43.-23(e).

Without repeating what the Houston First Court of Appeals has stated in its opinion, we conclude that the above presumption, in this instance, locks in the fact of guilty knowledge of content and character of the film entitled "Little Yummy" on the part of the appellant. Also see *Red Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020, 1031 (5th Cir.1981), cert. denied sub. nom., *Theatres West, Inc. v. Holmes,* 455 U.S. 913, 102 S.Ct. 1264, 71 L.Ed.2d 453 (1982). See, generally, *United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Leary v. United States,* 395 U.S. 6, 31–32, 89 S.Ct. 1532, 1545–1546, 23 L.Ed.2d 57 (1969); *Tot v. United States,* 319 U.S. 463, 467–468, 63 S.Ct. 1241, 1244–1245, 87 L.Ed. 1519 (1942); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Connecticut v. Johnson,* —— U.S. ——, ——, 103 S.Ct. 969, 976, 74 L.Ed.2d 823 (1983). We

observe that in each of the above causes the Courts were not dealing with a constitutional freedom, which is presumptively protected, but were dealing with an issue which had no constitutional protection, at least initially.

Another obvious and inherent evil in the above presumption, even if called a permissive or rebuttable one, lies in the fact that it could apply to virtually *anyone* who makes available to the general public books, magazines, and films. For example, a person who works for a public library, through the application of the statutory presumption, could be convicted of promoting obscene material, with such person doing nothing more than giving a book, magazine, or film to a patron of the library, and the book, magazine, or film is later determined to be obscene. We also believe that such presumption would wreak havoc upon a large business establishment that makes available to the general public magazines, books, and films. No matter how large the establishment, or how numerous and varied the publications or the films on the shelves and on the inside of the premises might be, nevertheless, if a book, magazine, or film is found thereon, and it is later determined that such is obscene, any owner, proprietor, manager, exhibitor, or clerk could be convicted even though such person would not have the slightest idea of what the content and character of the book, magazine, or film might be. We are unable to state that a merchant making available to the general public books, magazines, and films will know the content and character of each one of those books, magazines and films. The risk of suppressing freedom of expression is not just negligible in such instance; it rises to astronomical proportions. In this instance, from the record of appeal, we are informed that the bookstore contained magazines and books, and that the projectors inside the booths probably had films different from the film entitled "Little Yummy." We are not, however, told what the content and character of the magazines, books, or other films portrayed, revealed, or depicted,

and it is not our function to speculate upon what that might be.

Freedom of expression is too important a right to allow it to be seriously impeded or impaired by a presumption such as the one implicated in this cause. The presumption provided by Section 43.23(e) is constitutionally invalid, and its application to this cause is impermissible because (1) it infringes upon the freedom of expression guaranteed by the First Amendment. *Smith v. California,* supra; *Speiser v. Randall,* 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); (2) it cannot be stated with reason and substantial assurance that the presumed fact is always more likely than not to flow from the proved fact on which it is made to depend. *Leary v. United States,* 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 27 L.Ed.2d 57 (1969) ("a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend"); and (3) it tends to displace the burden of proof. *Skinner v. State,* 647 S.W.2d 686 (Tex.App.—Houston [1st] 1982).

Any and all decisions of Courts of Appeals holding to the contrary are overruled to the extent of any conflict. See, for example, *Tyree v. State,* 638 S.W.2d 245 (Tex.App.—Ft. Worth 1982); *Moses v. State,* 633 S.W.2d 585 (Tex.App.—Houston [14th]); *Garcia v. State,* 633 S.W.2d 611 (Tex.App.—El Paso 1982); *Sanders v. State,* 649 S.W.2d 59 (Tex.App.—Houston [1st] 1982); *Mc Mahon v. State,* 630 S.W.2d 730 (Tex.App.—Houston [14th] 1982); *Porter v. State,* 638 S.W.2d 249 (Tex.App.—Ft. Worth 1982).

The record of appeal in this cause is clear as crystal that without invoking and applying the invalid presumption, appellant could not have been legally convicted of promoting by exhibiting the obscene film.

Other than the mere act of giving change to Hugo, there is no other evidence in the record which reflects or indicates appellant promoted obscenity by exhibiting an obscene film to Hugo, *and* that in doing so he had guilty knowledge of the content and character of the film. Absent reliance upon the presumption, the proof offered did not establish that appellant knew the allegedly obscene content and character of the obscene film. He is entitled to an acquittal.

Because of what we have stated, it is not necessary to make the determination whether appellant actually "exhibited" the film.

■ By what we have stated, we do not mean to imply or leave the inference or impression that we are holding that promoters of obscene material are beyond the law. They are not. The above simply means that the prosecution must prove its accusation without the statutory presumption. We have confidence in our law enforcement officials to believe that they are sufficiently creative and innovative enough to ferret out obscene material, as well as arrest and prosecute those persons who promote obscenity and reap the profits that the sale of obscene material produces. All this opinion holds is that law enforcement officials must rely upon sufficient inferences of guilt to obtain and sustain a conviction for promoting obscene material,[3] but may not, as they did in this cause, rely upon the statutory presumption to establish guilty knowledge on the part of the accused of the content and character of the obscene material.

Appellant also asserted in the appeal and in the petition for discretionary review that the evidence is insufficient to support the conviction because the trial court never viewed the film before finding appellant guilty. Appellant is correct that the record does not reflect that the trial court ever viewed in its entirety the film entitled "Little Yummy." And the opinion of the Court

---

**3.** Generally speaking, this is how the State, where it is without direct evidence of guilty knowledge, usually establishes its case beyond a reasonable doubt against the accused. Proof

of knowledge and intent are usually, because of their very nature, established inferentially from the totality of the facts of the case.

of Appeals indicates it also did not ever view in its entirety the film entitled "Little Yummy."

■ For the reasons stated in this Court's decision of *Andrews v. State,* 652 S.W.2d 370 (Tex.Cr.App.1983), it is now incumbent upon the trial court and, if conviction and appeal, the appellate court to make the independent determination of whether material that is alleged to be obscene is factually and constitutionally obscene, *if issue is made in the trial or appellate court whether the material is obscene, either constitutionally or factually.*

■ We have, however, contrary to the trial court and the Court of Appeals, independently examined in its entirety the film entitled "Little Yummy," to make the determination whether the film in its entirety is factually and constitutionally obscene. We have done this because of the argument appellant made in the trial court, "This Defendant engaged in no conduct that would violate the Texas Penal Code or the allegations of the information," the ground of error he raised in the appeal, and the fact that in reviewing appellant's grounds of error, in light of the arguments made thereunder, as well as the State's responses, and under our inherent power to determine whether the film is constitutionally obscene, we have found such viewing to be necessary. We find no need to state in detail what the character and content of the film depicts, portrays, or reveals. Suffice it to say, we find that the whole of the film is both factually and constitutionally obscene. We observe that appellant has not ever, either in the trial court or in the Court of Appeals or in this Court, stated in what respect the film may not be factually or constitutionally obscene, apparently relying upon the presumption that the film is not obscene. After viewing the entire film, we believe we understand why he has not done so. In any event, beyond any reasonable doubt, the presumption of non-obscenity has been rebutted. For the reasons stated in *Andrews v. State,* Id., the holding of the Court of Appeals that simply because the

evidence was stipulated that this eliminated the need for the trial court and the appellate court to view the film in its entirety is overruled. However, by our finding and holding that the film is obscene, as a matter of fact and constitutional law, appellant's ground of error is rendered moot.

For fear that the opinion in *Andrews v. State,* supra, and in this cause may be misinterpreted, regarding appellate review of what is alleged to be obscene material, we believe there is a need to add to what we stated in *Andrews v. State,* supra.

■ Appellate review of what is alleged to be obscene material comes into play *only if there is an issue raised in the trial court or the appellate court that the material is not obscene, either factually or constitutionally. Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974). In this instance, we believe appellant made it an issue in the trial court and in the Court of Appeals whether the film was both factually and constitutionally obscene. Thus, the trial court should have first viewed the film in its entirety to make the determination whether it was factually and constitutionally obscene, and thereafter the Court of Appeals should have done, as we did, the same thing.

■ However, should there not be an issue raised in the trial court *or* in the appellate court that the material is not either factually or constitutionally obscene, then it is not incumbent upon the trial court, or, if conviction and appeal, upon the appellate court to view the entire material and make the independent determination whether the material is factually or constitutionally obscene. Of course, if the defendant contends either during the trial or upon appeal that the material is not factually obscene, in accordance with the average person-contemporary community standard test, then, to resolve that issue, it would be necessary for the trial court and, if conviction and appeal, the appellate court to independently view the material and determine whether as a matter of law the material is factually obscene. Of course, if

the defendant expressly contends upon appeal that the material is not constitutionally obscene, although admitting the material is factually obscene, it would still be incumbent upon the appellate court to view the material in its entirety and make the independent determination whether the material is constitutionally obscene. However, should the appellate court, in reviewing any grounds of error, determine that the material may not be either factually or constitutionally obscene, it would be free to decide either of those issues, pursuant to its inherent judicial powers, even though such issue was not raised on appeal. See *Howeth v. State,* 645 S.W.2d 787 (Tex.Cr.App.1983); *Jenkins v. Georgia,* supra.[4]

For the reasons stated, the judgment of the Court of Appeals is reversed and the cause remanded to the trial court to enter a judgment of acquittal. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

ONION, P.J., and CAMPBELL, J., concur in the result.

W.C. DAVIS, J., dissents.

## OPINION ON STATE'S MOTION FOR REHEARING

MILLER, Judge.

We granted the State's motion for leave to file a motion for rehearing to consider whether this Court's holding on original submission is in conflict with the New York Court of Appeals decision in *People v. Kirkpatrick,* 32 N.Y.2d 17, 343 N.Y.S.2d 70, 295 N.E.2d 753 (1973), appeal dismissed for want of a substantial federal question sub nom., *Kirkpatrick v. New York,* 414 U.S. 948, 94 S.Ct. 283, 38 L.Ed.2d 204 (1974); a 1973 opinion which upheld the constitutionality of a statutory presumption almost identical to V.T.C.A., Penal Code, § 43.-23(e).[1] In addition, we are to consider whether the U.S. Supreme Court's dismissal of the *Kirkpatrick* appeal for want of a substantial federal question represents a ruling on the merits by the Supreme Court on the specific challenges to the ruling of the lower appellate court.

We find that this Court's holding is not in conflict with *Kirkpatrick,* supra, and that under the facts in the instant case no precedential value should be given to the Supreme Court's summary dismissal.

In *Kirkpatrick,* two booksellers were found guilty in a non-jury proceeding of the sale of an obscene adult comic magazine. The appellate court in addressing the issue of sufficiency of the evidence of scienter "found scienter both by reason of a statutory presumption [New York Penal Law, § 235.10, subd. 1][2] not having been rebutted and by its own inference of the fact of knowledge from the evidence." *Kirkpatrick,* supra, 343 N.Y.S.2d at 74, 295 N.E.2d at 756. The New York court detailed the evidence of knowledge of content and character upon which it relied in affirming the conviction. The evidence revealed that defendant, Dargis, manager and sole employee of a bookstore, ordered and reordered the magazine, personally unpacked the copies and placed them on the shelves, and sold approximately 25 of the magazines himself. Dargis admitted glancing through the "end-

4. Of course, the simplest and easiest way to eliminate the issue, whether the material is either factually or constitutionally obscene, from arising is for the trial court and, if conviction and appeal, the appellate court to take the time to independently view in its entirety the alleged obscene material, and make the independent determination whether it is factually or constitutionally obscene.

1. V.T.C.A., Penal Code, § 43.23(e) (Vernon 1979) provides:
   "A person who promotes or wholesale promotes obscene material or an obscene device

or possesses the same with intent to promote or wholesale promote it in the course of his business is presumed to do so with knowledge of its content and character."

2. New York Penal Law, § 235.10(1) (McKinney 1965) provides:
   "A person who promotes or wholesale promotes obscene material or possesses the same with intent to promote or wholesale promote it, in the course of his business is presumed to do so with knowledge of its content and character."

ing pages" of the magazine and noted the "Adults Only" legend on the cover. Defendant Kirkpatrick, co-manager of another bookstore,[3] was also responsible for ordering and reordering the various issues of the magazine and admitted personally having sold approximately 30 copies. The *Kirkpatrick* court found that "the characteristic drawings of the magazine are largely of the same kind from the first page to the last, so that any sampling would have been illustrative of the bulk." *Kirkpatrick,* supra 343 N.Y.S.2d at 74, 295 N.E.2d at 756. Without relying on the statutory presumption, the court found, from the evidence, that the scienter requirement had been satisfied.

In the instant case, there is no evidence that the appellant "did ... unlawfully and knowing the content and character of the material, intentionally exhibit to G.P. Hugo obscene material ...", as alleged in the information. The evidence merely reflects that the appellant was standing behind the counter in the front area of the store, was the sole employee in the store, and gave the complainant an unknown amount of change. Appellant was not shown to have any managerial responsibilities in the operation of the bookstore, was not shown to have anything to do with the operation of the movie projector, or the selection of or the showing of the film, and was not shown to have any financial interest in the bookstore. The facts in the instant case are wholly different than those highlighted in *Kirkpatrick* upon which the State relies so heavily. In *Kirkpatrick* as previously stated, the defendants testified that they were responsible for ordering and reordering the obscene publication, admitted that they had personally sold numerous copies of the magazine and in addition *had skimmed the pages of the magazine.* It was from the defendant's conduct and their own testimony, that the *Kirkpatrick* court found scienter. The court, in a sharply divided 5–4 decision, upheld the presumption and set forth the "alternative ground for sustaining the conviction ... based on the inference of fact" made by the trial court, independent

of the presumption. *Id.,* 343 N.Y.S.2d at 77. 295 N.E.2d at 758.

The State further asserts that this Court is in direct conflict with the U.S. Supreme Court in our failure to rely on *Kirkpatrick* and give legal credence to its subsequent dismissal on appeal by the U.S. Supreme Court "for want of a substantial federal question." The State explains the impact and precedential value of the court's summary dismissal by citing *Mandel v. Bradley,* 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977).

"Summary affirmances and dismissal for want of a substantial federal question without a doubt reject the specific challenges presented in the statement of jurisdiction and do leave undisturbed the judgment appealed from. They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions." *Id.* at 176, 97 S.Ct. at 2240.

While we understand the significance of the United States Supreme Court's dismissal of *Kirkpatrick,* supra, we find that the Supreme Court's action is not binding in light of the New York Appeals Court's specific reasons for its affirmance. The New York court held that the conviction would stand regardless of the validity of the presumption *because there was enough evidence to satisfy the requirement of scienter without resorting to the statutory presumption of New York Penal Law, § 235.10.* Thus, the alternative reasoning of the court in affirming the conviction failed to present to the Supreme Court a controversy to resolve, thus no substantial question. It is interesting to note that the Fifth Circuit in *Red Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020 (5th Cir.1981), a case upon which the State relies heavily in its motion, acknowledged that court's own failure to give legal merit to *Kirkpatrick,* supra, and said, "Relevant to but not dispositive of this issue [the constitutionality of V.T.C.A., Penal Code,

---

**3.** Defendants Dargis and Kirkpatrick were manager and co-manager of two separate

bookstores which both sold the obscene publication. Their cases were tried together.

§ 43.23(e) & (f) ] is the Supreme Court's dismissal of the appeal of *People v. Kirkpatrick ...*" *Id.* at 1031. The court added that the *Kirkpatrick* court affirmed the convictions on the alternative ground that the evidence of actual knowledge was sufficient and the presumption was constitutional as applied. The Fifth Circuit said "Recognizing the precedential effect of a dismissal of an appeal under these circumstances, we discern no definitive guidance on the validity of presumptions from the Supreme Court's summary affirmance of the New York court's two pronged holding." *Id.*

Justice Brennan, in his concurring opinion in *Mandel,* supra, noted the effect of the court's decision concerning summary dismissals and said,

"After today, judges of the state and federal systems are on notice that, before deciding a case on the authority of a summary disposition by this Court in another case, they must (a) examine the jurisdictional statement in the earlier case to be certain that the constitutional questions presented were the same, and if they were, (b) determine that the judgment in fact rests upon decision of those questions and not even arguably upon some alternative non-constitutional ground. *The judgment should not be interpreted as deciding the constitutional question unless no other construction of the disposition is plausible.*" Id. 432 U.S. at 180, 97 S.Ct. at 2242. (emphasis added)

See also, *Washington v. Confederated Bands and Tribes,* 439 U.S. 463, 472, 476 fn. 20, 99 S.Ct. 740, 747, 749, 58 L.Ed.2d 740, 753 (1979); *Ill. State Bd. of Elec. v. Socialist Workers,* 440 U.S. 173, 179, 182, 99 S.Ct. 983, 987, 989, 59 L.Ed.2d 230, 240 (1979).

■ In light of the independent and adequate non-federal ground presented in *Kirkpatrick,* as distinguished from the facts in the instant case wherein no evidence of scienter was introduced at trial to support the conviction, we find no precedential value should be given to the Supreme Court's dismissal of *Kirkpatrick.*

We uphold our opinion on original submission. The State's motion for rehearing is denied.

McCORMICK, J., concurs in the result.

TEAGUE, Judge, concurring.

In its opinion on original submission, this Court, relying upon the Supreme Court's decision of *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), stated the following:

When considering the validity or the applicability of a statutory presumption that may impinge or infringe upon First Amendment freedoms, we must closely and carefully scrutinize and examine such a presumption before it can ever be upheld and sustained.

This Court further stated the following in its original opinion:

Our research has yet to reveal a single instance where a statutory presumption, such as this one, which could infringe upon the freedom of speech or press, has, standing alone, ever survived constitutional challenge or muster, and neither the Court of Appeals nor the State directs our attention to such a case.*

This Court held on original submission that because a First Amendment freedom was implicated at the outset in this cause, the statutory presumption provided by V.T. C.A., Sec. 43.23(e), could not be used to obtain appellant's conviction. Had there been no First Amendment right implicated in this cause, then the statutory presumption might have been upheld.

---

* The State argues that *People v. Kirkpatrick,* 32 N.Y.2d 17, 343 N.Y.S.2d 70, 295 N.E.2d 753 (New York 1973), appeal dismissed for want of a substantial question sub. nom., *Kirkpatrick v. New York,* 414 U.S. 948, 94 S.Ct. 283, 38 L.Ed.2d 204 (1974) holds that a presumption similar to Sec. 43.23(e) will stand challenge or muster in the face of an implicated First Amendment right. However, it does not so hold, as the majority on rehearing correctly explains. See *post.*

The majority on rehearing correctly points out the following: "The New York court [*People v. Kirkpatrick,* 32 N.Y.2d 17, 343 N.Y.S.2d 70, 295 N.E.2d 753 (New York 1973), appeal dismissed for want of a substantial question sub nom., *Kirkpatrick v. New York,* 414 U.S. 948, 94 S.Ct. 283, 38 L.Ed.2d 204 (1974)] held that the conviction in that cause would stand regardless of the validity of the presumption because there was enough evidence to satisfy the requirement of scienter without resorting to the statutory presumption of New York Penal Law, Sec. 235.10. Thus, the alternative reasoning of the New York court in affirming the conviction failed to present to the Supreme Court a controversy to resolve, thus no substantial question."

Thus, the New York court, when confronted with the issue, unlike this Court, was able to use an alternative method of disposing of its case. This Court, in its original opinion, did quote from Chief Justice Fuld's dissenting opinion, but did so only in the context of the First Amendment issue that confronted this Court.

The State's motion for rehearing is correctly overruled.